NOT DESIGNATED FOR PUBLICATION

No. 121,622

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

G S CAPITAL MANAGEMENT, LLC,
*Appellee*,

v.

PAUL WHITE and TAMMY R. WHITE,
*Appellants*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed July 24, 2020.
Affirmed.

*Kenneth M. Clark*, of Kenneth M. Clark, P.A., of Wichita, for appellants.

*Frank M. Ojile*, of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

PER CURIAM: This is a foreclosure action concerning property in Sedgwick County. Paul and Tammy White, the property's previous owners, appeal the district court's decision to set aside the original sheriff's sale of the property. That earlier sale price was $150,000 less than the judgment against the Whites and $100,000 less than the Whites had indicated the property was worth. After reviewing the parties' arguments and the record before us, we find the district court did not abuse its discretion when it concluded the first sale was inequitable and set it aside. Thus, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

The Whites purchased a house in Sedgwick County in 2014. Before 2018, the Whites' property was subject to a mortgage held by Bank of the Panhandle (Panhandle). The Whites defaulted on their mortgage, and Panhandle filed a petition for foreclosure in 2017. The petition noted that as of August 1, 2017, the Whites owed Panhandle "$239,772.77 with interest thereon at the rate of 7.375% per annum from August 1, 2017, until paid." The Whites did not file an answer or otherwise respond to Panhandle's petition for several months. At the end of 2017, Panhandle moved for default judgment.

About two weeks later, the Whites filed for Chapter 13 bankruptcy, seeking a reorganization and partial elimination of their debts. As a result, the district court stayed the foreclosure action. In their bankruptcy filings, the Whites indicated the value of their house was $250,000.

The parties' filings in the Whites' bankruptcy case are not part of the record before us. But at some point, the Whites and the bankruptcy trustee agreed to lift the automatic bankruptcy stay as to the foreclosure action. The Whites and Panhandle (along with others with secured interests in the property) agreed that Panhandle was entitled to an in-rem judgment against the Whites—that is, a judgment that could only be collected against the foreclosed property—for the full amount of the mortgage, plus daily interest. As part of that judgment, the Whites agreed that Panhandle was free to proceed with foreclosing and selling the property. Panhandle filed an Amended Notice of Sale, Order of Sale, Notice of Sale, and Praecipe for Order of Sale.

For whatever reason, Panhandle offered to purchase the Whites' property at the foreclosure sale (commonly called a sheriff's sale) for $150,000—a significant deficiency below what the Whites owed on their mortgage. But Panhandle never sought to confirm this sale. Instead, shortly after the sheriff's sale took place, G S Capital Management,

LLC, (G S Capital) approached Panhandle wanting to buy its judgment against the Whites for $185,000—$35,000 more than the sale price. Panhandle viewed the potential sale of the judgment to G S Capital as an opportunity to recover more of its debt than otherwise would have been possible, given the in-rem judgment.

Panhandle thus moved to set the original sale aside. The Whites opposed Panhandle's motion, claiming such an action would cut short their right to redeem the property at the price Panhandle had bid.

After a hearing, the district court granted Panhandle's motion to set aside the sheriff's sale, ruling that a refusal to do so would be inequitable since the amount bid at the sale was $90,000 less than the Whites' debt, even without the interest. The court reasoned:

> "[I]t just strikes me that in this case, the bank has an interest in trying to preserve as much of what they provided in the mortgage to the White's in the first place. That is a reasonable thing that the Court should seek to protect or balance that interest and at least not to prejudice the bank who is left holding the asset with a deficiency."

G S Capital bought Panhandle's judgment against the Whites for $185,000 and was substituted as the plaintiff in the foreclosure action. A second sheriff's sale was scheduled for May 1, 2019.

Two days before the second sale, the Whites filed a motion to reconsider the court's order setting aside the original foreclosure sale. The Whites argued that Panhandle had not articulated a legal basis to not confirm the sale and, in particular, that it failed to allege that $150,000 was "substantially inadequate" under K.S.A. 60-2415(b). G S Capital countered that, with fees and interest, the Whites owed $306,187.89, and—as the court had previously noted, though not using the same words—$150,000 was substantially inadequate to cover that debt.

The district court held a hearing on the Whites' motion for reconsideration the day after they filed it (and the day before the scheduled sale). Although their written motion focused on the adequacy of the $150,000 bid, the main concern the Whites expressed at the hearing was that they might not be able to exercise their right of redemption if the property sold for more than $150,000. The district court denied the Whites' motion, concluding the initial $150,000 bid was substantially inadequate. The court found that the Whites' valuation of their property in the bankruptcy proceedings as being worth $250,000 belied their claim that the previous sale amount was reasonable.

The next day, G S Capital purchased the property at the sheriff's sale for $306,187.89—the full amount of the in-rem judgment. The district court later confirmed this sale without any objection from the Whites. The Whites now appeal the court's decision to set aside the first sheriff's sale and the denial of their motion to reconsider.

## DISCUSSION

The Whites contend the district court erred in setting aside the original foreclosure sale, claiming there was no evidence that the first sale was "substantially inadequate." Before analyzing this claim, however, we must address a procedural point, as G S Capital argues that this court does not have jurisdiction to hear the Whites' appeal.

G S Capital concedes the Whites filed a timely notice of appeal on May 1, 2019, the day of the second sheriff's sale and the day after the district court denied the Whites' motion to reconsider. But G S Capital asserts this court nevertheless lacks appellate jurisdiction because the Whites did not seek to docket their appeal with this court until July 31, 2019—roughly three months after they filed their notice of appeal and outside the 60-day window for docketing an appeal under Supreme Court Rule 2.04 (2020 Kan.

4

S. Ct. R. 15). This court granted the Whites' request to docket their appeal out of time on August 8, 2019.

G S Capital's jurisdictional assertion is without merit. Kansas courts have long recognized that although the timely filing of a notice of appeal is jurisdictional, see K.S.A. 2019 Supp. 60-2103, the same is not true for a docketing statement. See *Fowler v. State*, 37 Kan. App. 2d 477, 481, 154 P.3d 550 (2007). Instead, this court has the discretion to docket an appeal outside of the timeframe in Rule 2.04 if it believes such action is justified by the appellant. 37 Kan. App. 2d at 481. We have done so here.

We thus proceed to consider the Whites' contention that the district court erred in setting aside the original foreclosure sale. We review a district court's decisions concerning a foreclosure sale for an abuse of discretion. *Reverse Mortgage Solutions, Inc. v. Goldwyn*, 56 Kan. App. 2d 129, 132, 425 P.3d 617 (2018), *rev. denied* 311 Kan. ___ (February 28, 2020). A court abuses its discretion if no reasonable person would agree with its decision or the decision is based on a factual or legal error. 56 Kan. App. 2d at 132. To the extent the Whites' claims require an interpretation of Kansas foreclosure statutes, our review over such questions is unlimited. See *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

K.S.A. 60-2415 sets forth the framework for a district court's actions after a foreclosure sale. K.S.A. 60-2415(a) states that once a sheriff has reported to the court the outcome at the sale, "[i]f the court finds the proceedings regular and in conformity with law and equity, it shall confirm the same." The Whites point to this provision, arguing the district court here should have confirmed the sale and not set it aside.

There are both practical and legal problems with this argument. Practically, Panhandle never *asked* the court to confirm the sale, so that question was not squarely before the court. Instead, Panhandle immediately asked the court *not to confirm* the

5

sale—to set it aside. More importantly, from a legal standpoint, K.S.A. 60-2415(b) provides district courts with significant equitable discretion to determine whether to confirm a sale. That section provides:

> "The court may decline to confirm the sale where the bid is substantially inadequate, or in ordering a sale or a resale, may, in its discretion, if conditions or circumstances warrant and after a proper hearing, fix a minimum or upset price at which the property must be bid in if the sale is to be confirmed; or the court may, upon application for the confirmation of the sale, if it has not theretofore fixed an upset price, conduct a hearing to establish the value of the property, and as a condition to confirmation require the fair value of the property be credited upon the judgment, interest, taxes and costs. A sale for the full amount of the judgment, taxes, interest and costs shall be deemed adequate." K.S.A. 60-2415(b).

We construe the equitable powers in K.S.A. 60-2415 "broadly to apply to all parties with interests in the confirmation proceedings." *Citifinancial Mortgage Co., Inc. v. Clark*, 39 Kan. App. 2d 149, 155, 177 P.3d 986 (2008).

This statute thus vests the district court with the discretion to decline to confirm a sheriff's sale—and to order a resale—when the bid is "substantially inadequate." K.S.A. 60-2415(b). Ordinarily, too low a sale price at a foreclosure sale is undesirable for both the creditor and the debtor. If the price is too low, the creditor does not receive the full amount of the judgment, and the debtor must pay a deficiency judgment—the difference between the sale price and the amount owed. See *Olathe Bank v. Mann*, 252 Kan. 351, 362, 845 P.2d 629 (1993). But the judgment against the Whites was in rem (only against the foreclosed property), and the Whites were protected by the bankruptcy proceedings from further efforts to collect the debt. Thus, they would not be required to pay Panhandle, or later G S Capital, any portion of the judgment that was not satisfied by the sale of the house.

The Whites nevertheless argue that the court erred in setting aside the original foreclosure sale, as it did not specifically find that the $150,000 sale price was "substantially inadequate." We disagree. It is true the district court did not explicitly describe the $150,000 sale price as "substantially inadequate" until it denied the Whites' motion to reconsider. But when it originally set aside the sale, the court noted the sale price was $90,000 less than the judgment, without including any interest. In such instances, the court noted it was reasonable for the bank to "preserve as much of what [it] provided to the mortgage to the Whites in the first place."

The original $150,000 sale price was substantially below what the Whites owed. At the time of the second sale, the judgment against the Whites was for more than $300,000. And the Whites had indicated in their own bankruptcy filings that the value of the house was $250,000—$100,000 above the original sale price. The district court did not err in finding the first sale price to be inequitably low (what the statute describes as "substantially inadequate").

The Whites' main challenge to setting aside the first sale was not the adequacy of the sale price, however. Rather, they were unhappy because if the judgment creditor were to obtain a higher price at the second sale, it would be more difficult for the Whites to exercise their redemption rights. See K.S.A. 2019 Supp. 60-2414(a); see also *Reverse Mortgage Solutions*, 56 Kan. App. 2d at 133 (generally describing a property owner's right of redemption). That is, if the Whites wanted to buy back the house during the three months following the sale, they would no longer be able to do so for $150,000.

The Whites argued this point to the district court. The court ultimately concluded, however, that the balance of the equities weighed in favor of setting aside the sale. This conclusion is reasonable. Indeed, the Whites provide no support for their argument that their redemption rights somehow superseded the district court's discretion in deciding whether to confirm the sale.

7

And the record supports the district court's conclusion that the fairer course in this case would be to set aside the original sale. While the Whites were not prejudiced by the $150,000 sale price, the bank faced a significant loss. Seeing that Panhandle had an opportunity to recover more of its losses, and knowing the sale price was substantially below the amount of the judgment and the Whites' valuation of the property, the district court did not act unreasonably in setting aside the $150,000 sale price and allowing the creditor to take an alternative path—one eventually resulting in a sale for the full judgment. Accord K.S.A. 60-2415(b) ("A sale for the full amount of the judgment . . . shall be deemed adequate.").

The district court did not err in setting aside the original foreclosure sale or in denying the Whites' motion to reconsider.

Affirmed.