NOT DESIGNATED FOR PUBLICATION

No. 122,582

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DELAWARE TOWNSHIP and HIGH PRAIRIE TOWNSHIP,
*Appellees*,

v.

CITY OF LANSING, KANSAS,
*Appellant*,

LEAVENWORTH COUNTY, KANSAS, and
LEAVENWORTH COUNTY BOARD OF COMMISSIONERS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed March 5, 2021.
Affirmed.

*Adam M. Hall*, of Thompson-Hall, P.A., of Lawrence, for appellant.

*Timothy P. Orrick*, of Orrick & Esrkine, L.L.P., of Overland Park, for appellee Delaware
Township.

*Chadler E. Colgan*, of The Colgan Law Firm, LLC, of Kansas City, for appellee High Prairie
Township.

*David C. VanParys*, county counselor, for appellee Leavenworth County Board of
Commissioners.

*Amanda L. Stanley*, general counsel, for amicus curiae League of Kansas Municipalities.

Before GARDNER, P.J., BRUNS, J., and WALKER, S.J.

PER CURIAM: In 2003, the Leavenworth Board of County Commissioners (BOCC) created a fire district which included the City of Lansing (Lansing), the Delaware Township (Delaware), and the High Prairie Township (High Prairie). Simultaneously with the creation of the fire district, the parties entered into an interlocal agreement which, in part, purported to govern the disposition of fire district property in the event that the agreement was terminated. The agreement provided that any party could terminate the agreement through proper notice.

Several years passed in which the fire district served its function within the county. In 2018, Lansing decided to terminate the agreement and sent notice to the parties as specified in the agreement. In its notice, Lansing made it clear that it would be providing fire protection services for itself in the future. As part of the notice, Lansing sought disposition of the fire district's property.

Delaware and High Prairie petitioned for declaratory judgment seeking to stop the dissolution or alteration of the fire district and the disposition of the fire district property. The district court granted the petition, ruling in favor of Delaware and High Prairie, and Lansing appeals. Because under controlling Kansas law Lansing could not unilaterally alter or disorganize the fire district and could not force a disposition of property through its notice, we affirm the district court's holding.

FACTS

In June 2003, Lansing, Delaware, and High Prairie—all three of which are located within Leavenworth County—entered into "An Interlocal Cooperation Agreement for the Establishment of a Joint Board, a Fire District Board of Trustees and the Funding and Operation of Fire District No. 1, County of Leavenworth, Kansas" (Agreement). The purpose of the Agreement was to create, and provide for the operation of, a fire district covering the city and townships (Fire District). The Agreement stated that the parties

2

entered into it "pursuant to the provisions of K.S.A. 12-2901 et seq.," which is the Interlocal Cooperation Act. The Agreement was set to be in effect for five years, with an automatic renewal for four-year terms thereafter, unless a party terminated in a manner consistent with the Agreement.

The Agreement also stated that the Leavenworth County Commission delegated "its authority to appoint the members of the Fire District Board of Trustees to a joint board appointed by the governing bodies of Lansing, Delaware and High Prairie." The Agreement also purported to cover ownership and disposition of Fire District property. Under the Agreement, "[o]n or after January 1, 2004, any equipment, vehicle, building, personalty or real property acquired by the Fire District, by purchase, contribution or otherwise, except as otherwise provided below, shall be owned solely by the Fire District."

The Agreement contained a number of exceptions. For example, the existing township fire stations were retained by the respective townships, but the Fire District could purchase the fire stations for $1 on the 10th anniversary of the establishment of the Fire District. The townships agreed to lease the same buildings, as well as equipment and vehicles used by the townships, to the Fire District for $1 a year.

The Agreement also purported to set out specifics for how a party could terminate the Agreement and dissolve the Fire District. Under the section 10.b. of the Agreement:

> "Subject to the provisions of paragraph 2 of this agreement, any party may terminate this agreement by providing to the other parties written notice of its intention to terminate the agreement. Such notice shall not be effective unless received by the other parties not less than eighteen (18) months prior to the effective termination date."

3

In the event the Agreement was terminated by a party, the division of property was also covered. First, a general statement provided that "[p]aragraph 8 of this agreement shall apply and the property referenced shall be disposed of in accordance with the terms of that section." Paragraph 8 of the Agreement refers to the title of the property purchased by the Fire District, and the property each party brought into the Agreement, such as the townships' fire stations.

Second, "[a]ll other assets of the Fire District shall be apportioned between the parties based upon the assessed valuation of each party as compared to the assessed valuation of the Fire District as a whole." To determine the valuation, the parties agreed to "utilize accepted accounting and depreciation practices." If no agreement on the value of the property could be reached, the parties agreed to submit to binding arbitration.

If, at the time of termination, the Fire District had any liabilities, the Agreement provided that the parties "shall jointly be responsible for the discharge of that liability." The amount each party was required to contribute would be based "upon a comparison of the assessed valuation of each party as each party compared to the assessed valuation of the Fire District as a whole."

On June 23, 2003, following a public hearing, the BOCC adopted Resolution 2003-28 creating Fire District No. 1 in Leavenworth County. The resolution also approved the Agreement between Lansing, Delaware, and High Prairie, as the constituent parts of the Fire District, and delegated Leavenworth County's role in supervising and operating the affairs of the district as contemplated by the Agreement. Notably, the resolution expressly invoked the provisions of K.S.A. 19-3601 et seq., the statutory sections allowing counties to create fire districts, as its authority for the BOCC's action.

Fifteen years after the creation of the Fire District, on June 28, 2018, the Lansing City Council provided written notice to Delaware and High Prairie of its decision to

4

terminate its relationship with the Fire District. The exact intended effect of this written notice has been disputed by the parties. Lansing argues it merely sought to terminate its participation under the Agreement but fully expected that Delaware and High Prairie might wish to continue participation in the Fire District under the Agreement. To the contrary, Delaware and High Prairie believed that Lansing was seeking to dissolve or alter the Fire District.

In response to Lansing's notice, Delaware and High Prairie filed a petition for declaratory judgment in the district court seeking to stop the dissolution or alteration of the Fire District. The townships argued that under K.S.A. 19-3604, a fire district may only be disorganized when the board of county commissioners that created the fire district, after receiving a proper petition by county residents, adopts a resolution to disorganize a fire district. The townships argued that this did not occur here, and the sections of the Agreement that purported to allow unilateral dissolution of the Fire District were contrary to the law. Lansing filed its answer and included a counterclaim, seeking a declaration that the Agreement was a lawful and enforceable contract and that Lansing's written notice was sufficient to terminate the Agreement.

The parties presented the district court with a set of stipulations as to the salient facts, and the court heard arguments on the petition for declaratory judgment. Based on those stipulations, the district court entered its order on the petition for declaratory judgment in November 2019.

After determining that there was an actual controversy, allowing the district court to adjudicate the issue, the court decided, in short, that despite the language in the Agreement, only the BOCC could dissolve the Fire District and that Lansing's notice was ineffective to circumvent BOCC's authority. As part of its decision, the district court held that the statutes authorizing the creation of a fire district "are statutes of universal application in the State of Kansas" and, therefore, the Kansas home rule does not allow

5

municipalities to deviate from the statutes on the creation, alteration, or disorganization of a fire district. As the district court saw it, only the BOCC had the power under the statutes to alter or dissolve the Fire District, but it could not initiate the alteration or dissolution without first receiving a petition to do so. Because the BOCC could not unilaterally initiate the alteration or dissolution of a fire district, the district court determined that the BOCC could not "empower or authorize a city or township to do so by interlocal agreement." As part of its order, the district court held that "[a]n interlocal agreement cannot be used to require the apportionment of all of the property of a fire district on a party's termination of the interlocal agreement."

Given those determinations, the district court held that Lansing's notice did not disorganize or alter the Fire District. Instead, if Lansing wanted to withdraw from the Fire District, the district court determined that it had to follow the procedure set out in K.S.A. 19-3604.

Lansing filed a motion to alter or amend the judgment, which the district court denied. Lansing has timely appealed from the district court's rulings.

ANALYSIS

In order to address the pertinent issues of this case, the relevant statutes and the Agreement and documents surrounding the Agreement need to be set out more fully.

*Kansas law permits counties to create fire districts.*

The creation of a fire district is governed by K.S.A. 19-3601 et seq.

K.S.A. 19-3601 authorizes and empowers "[t]he board of county commissioners of any county of the state . . . to organize one or more fire districts in any portion of the

6

county not within an incorporated city . . . and any city of the second and third classes may be included within such district." The same statute provides that the "board of county commissioners of the county shall be and constitute the governing body of each fire district within the county." K.S.A. 19-3601.

The powers of the governing body of a fire district are listed in K.S.A. 19-3601a. The governing body has the power to:

"(a) Enter contracts;

"(b) acquire and dispose of real and personal property;

"(c) acquire, construct, reconstruct, equip, operate, maintain and furnish buildings to house fire fighting equipment;

"(d) acquire, operate and maintain fire fighting equipment;

"(e) issue bonds as provided in this act;

"(f) pay compensation and salaries to fire district employees;

"(g) pay compensation to volunteer members of the fire district for fighting fires, responding to emergencies or attending meetings;

"(h) exercise eminent domain;

"(i) pay the operation and maintenance expenses of the fire district and any other expenses legally incurred by the fire district;

"(j) pay for the acquisition, installation or maintenance of one or more fire hydrants, or similar devices for fighting fires, including necessary equipment, services or supplies related thereto.

"The acquisition, installation and maintenance shall be subject to the mutual agreement of the governing body of the fire district and the governing body of the rural water district which owns, operates or maintains the water line on which the fire hydrant, or other similar device for fighting fires, is to be installed; and

"(k) do all other things necessary to effectuate the purposes of this act." K.S.A. 19-3601a.

A board of county commissioners may organize its county into one or more fire districts upon the board's own motion "by the adoption of a resolution at some regular or

7

adjourned regular meeting of the board." K.S.A. 19-3602. The board may also adopt a resolution in the same manner if a sufficient petition is made by county residents seeking the creation of a fire district. K.S.A. 19-3603.

The statutes also explain the procedure for disorganizing a fire district. Under K.S.A. 19-3604(a):

> "Any fire district may be disorganized by the board of county commissioners at any time after four years from the date of the publication of the final resolution for the first organization of such district *upon a petition to the board* and the making of an order in like manner as in the case of organizing any fire district under K.S.A. 19-3603, and amendments thereto." (Emphasis added.)

The same statute discusses altering an existing fire district to include new lands or exclude lands already included in the fire district. In order to do so, "a petition to the board of county commissioners signed by the owners of at least 10% of the area" seeking to join or leave the fire district, must be created. K.S.A. 19-3604(b). If the petition is sufficient, the board may adopt and publish a resolution to effectuate the petition. However, a petition protesting the alteration signed by owners of "more than 19% of the area of the lands" involved can veto the resolution. K.S.A. 19-3604(b).

Under K.S.A. 2019 Supp. 19-3605, a city within or adjoining the boundaries of a fire district may be included in the fire district if the city's governing body deems it advisable and the board of county commissioners agrees.

Pertinent to this case, after a board of county commissioners has created a fire district, it "may appoint a board of trustees of not less than three members and not more than nine members." K.S.A. 19-3612a(a). The board of trustees "may be vested with all of the powers theretofore vested in the board of county commissioners, or such supervisory powers as the board of commissioners, by resolution, may delegate, and the

board of trustees may exercise all powers so delegated." K.S.A. 19-3612a(a). If an interlocal agreement permits, the board of county commissioners may also delegate its authority to choose the members of the board of trustees to a joint board appointed by the governments of the cities and townships located within the fire district. K.S.A. 19-3612a(b).

The interlocal agreements contemplated by the statute are addressed in the Interlocal Cooperation Act, K.S.A. 12-2901 et seq., which seeks "to permit local governmental units to make the most effective use of their powers by enabling them to cooperate with other localities, persons, associations and corporations on a basis of mutual advantage." K.S.A. 12-2901. Under the act, any power or powers of a public agency—including fire districts, counties, townships, and cities—"may be exercised and enjoyed jointly with any other public agency of this state or with any private agency." K.S.A. 12-2904(a).

An interlocal agreement between public agencies is required to specify, among other things, its duration, and the "permissible method or methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon such partial or complete termination." K.S.A. 12-2904(d)(1), (5). The statute also requires the agreement to specify "[a]ny other necessary and proper matters." K.S.A. 12-2904(d)(6). In addition, many types of interlocal agreements, including the one in this case, must be approved by the attorney general. See K.S.A. 12-2904(g). The Agreement in this case was approved by the Kansas Attorney General's Office.

*The Leavenworth BOCC creates Fire District 1.*

In May 2003, the BOCC adopted a resolution with the intent of creating the Fire District, as required by K.S.A. 19-3602. A month later, Lansing's governing body adopted a resolution approving a petition to have Lansing included in the Fire District, as

required by K.S.A. 19-3605. The parties then executed the Agreement, which encompassed the BOCC's creation of a board of trustees provided for in K.S.A. 19-3612a(a) as well as an interlocal agreement under K.S.A. 12-2904 between Lansing, Delaware, and High Prairie to create a joint board that granted the BOCC's power to appoint the members of the board of trustees under K.S.A. 19-3612a(b). In the Agreement, the BOCC delegated "its authority to appoint the members of the Fire District Board of Trustees to a joint board appointed by the governing bodies" of the municipalities within the Fire District. In the resolution creating the Fire District, the BOCC delegated to the Board of Trustees, "[a]ll powers and duties of the Board of County Commissioners conferred upon them by the provisions of K.S.A. 19-3601, et seq., regarding the management and control of said Fire District."

*The district court properly ruled that Lansing could not unilaterally alter or dissolve the Fire District.*

With the preceding sections as background, we now turn to the issues in this case. The first issue to address is whether Lansing could unilaterally alter or dissolve the Fire District through its notice. Lansing does not address this issue directly and instead argues that the Fire District was not created under K.S.A. 19-3601 et seq. Additionally, Lansing contends the district court's determination that the interlocal agreement cannot require the disposition of Fire District property was incorrect. The other parties disagree with Lansing's interpretations.

The standard of appellate review is de novo for cases decided by the district court based upon documents and stipulated facts. *Rucker v. DeLay*, 295 Kan. 826, 830, 289 P.3d 1166 (2012).

To the extent we must interpret the Agreement and surrounding documents, we exercise unlimited review. See *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016).

10

Contracts are presumed legal. The burden lies on the party challenging the contract to prove it is illegal. *Frazier v. Goudschaal*, 296 Kan. 730, 749, 295 P.3d 542 (2013).

We also exercise unlimited review over questions of statutory interpretation. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

As we alluded to above, the district court determined that while Lansing stated that it merely sought to terminate the Agreement through its notice, the actual content of the notice was more akin to Lansing seeking to alter—by leaving—or to disorganize the Fire District. The record supports the district court's finding. Lansing's notice included language indicating it was prepared to begin an apportionment of the property as outlined in the Agreement. The content of the notice, coupled with Lansing's interest in "municipal fire protection," convinced the district court that Lansing was seeking, at the very least, to withdraw from the Fire District.

But Lansing could not unilaterally alter or dissolve the Fire District through its notice, even if the Agreement purported to allow such an action. Under K.S.A. 19-3604(a), a fire district can only be disorganized by the county commissioners upon a petition to do so and an order made "in like manner as in the case of organizing any fire district." Similar restrictions apply for the alteration of a fire district. Under K.S.A. 19-3604(b), a fire district can only be altered "upon a petition to the board of county commissioners signed by the owners of at least 10% of the area of the lands sought to be included or excluded." After such a petition, the board of county commissioners "*may* adopt and publish a resolution attaching or detaching the lands described in the petition or from the fire district." (Emphasis added.) K.S.A. 19-3604(b). This language clearly grants county commissioners the discretion to alter or decline to alter a fire district.

11

The record shows no such petitions to the Leavenworth BOCC or any resolution by the BOCC which would allow Lansing to alter or disorganize the Fire District. Since the Fire District was clearly created under K.S.A. 19-3601 et seq., Lansing could not unilaterally alter or dissolve the Fire District through its notice. However, that does not mean the notice did nothing. The Fire District and the Agreement are separate things.

*Lansing's notice to terminate could not force a disposition of Fire District property.*

Lansing argues that the district court erred in finding that its notice to terminate the Agreement could not be used to force a disposition of Fire District property under the terms of the Agreement. Lansing contends that the Interlocal Cooperation Act requires a disposition of property section and that the Agreement in this case complied with the law.

As noted above, we exercise de novo review on this issue also.

Section 10.a. of the Agreement acknowledges that the power to disorganize the Fire District remained with the BOCC. Section 10.b., however, provides that "any party may terminate this agreement" by providing proper notice. If the Agreement is terminated, then section 10.c., which governed disposition of property, takes effect.

That section states that the "property utilized and or owned by the Fire District shall be disposed of" as set out by subsections 1. and 2. Subsection 10.c.1., as mentioned above, refers back to Paragraph 8 of the Agreement and dictates that property referenced there "shall be disposed of in accordance with the terms of that section."

However, Paragraph 8 does not discuss the distribution of property in a situation like the one here. Instead, it primarily discusses the various buildings and equipment being brought into the Fire District by the parties and how they would be leased or purchased by the Fire District.

12

Because no property is disposed of under subsection 10.c.1., the residual clause in subsection 10.c.2., which governs the disposition of "[a]ll other assets of the Fire District," would control. Under subsection10.c.2., the property would be apportioned between the parties based on the valuation of each party as compared to the valuation of the Fire District as a whole.

A disposition of all Fire District assets after a party withdrew from the Agreement—Lansing's stated intent—seems nonsensical because the Fire District itself continues to exist. The Fire District continues to need and use the property that would be disposed of. If Lansing instead sought to disorganize, or withdraw from, the Fire District, the disposition of Fire District property seems more understandable. But it then runs into another set of issues. Essentially, Lansing would be attempting to unilaterally withdraw from the Fire District, which is still serving an important public function, and would be gutting the Fire District's ability to continue to serve that function as it left.

Under Kansas law, a contract is void as against public policy if the contract is "'injurious to the interests of the public or contravenes some established interest of society.'" *In re Marriage of Traster*, 301 Kan. 88, 105, 339 P.3d 778 (2014). Stated another way, a contract is against public policy if it is "'injurious to the interests of the public . . . or tends to interfere with public welfare or safety.'" 301 Kan. at 105 (quoting *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 548, 44 P.3d 364 [2002]).

It is not hard to see that the Agreement, if followed as written, is injurious to the interests of the public. Allowing a party to unilaterally disorganize, or disassociate from, a fire district and force a disposition of the fire district's property places the public in a state of heightened danger. The public's safety and welfare are jeopardized. This is most readily apparent where one party merely attempts to disassociate from the fire district and force a disposition of fire district property—Lansing's stated purpose—because the fire district continues to operate, but it does so with fewer resources.

13

Because the Agreement's property disposition provisions contravene public policy, the court should sever them from the contract. "A contract that contains valid and invalid provisions in which the lawful provisions can be easily severed will be upheld as to the lawful portion." *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 462, 790 P.2d 404 (1990). Here, Lansing is certainly free to terminate the Agreement through its notice. But terminating the Agreement cannot disassociate Lansing from the Fire District, nor can it disorganize the Fire District. Terminating the Agreement also cannot force a disposition of Fire District property. The provisions of the Agreement mandating a disposition of property upon termination of the Agreement must be severed from the Agreement.

Part of the problem here is that the Agreement tries to do too much. Under K.S.A. 19-3612a(b), the interlocal agreement is really only necessary to allow the "board of county commissioners [to] delegate its authority to appoint the members of the fire district board of trustees to a joint board appointed by the governing bodies of cities and townships located within the fire district." While K.S.A. 12-2904(d) may require an interlocal agreement to contain information about the disposition of property, that does not necessarily mean the interlocal agreement is required to govern the disposition of fire district property, since the interlocal agreement was only necessary to delegate the authority to appoint trustee members—something that does not involve property. The interlocal agreement is not what creates a fire district. Instead, the interlocal agreement is only needed for the county commission to delegate its authority to appoint members of the fire district board of trustees. See K.S.A. 19-3612a(b).

Although this a clear case of statutes being in conflict, in this situation we believe the powers unambiguously granted to county commissions over the creation, dissolution, and alteration of fire districts are superior to the provisions of interlocal cooperation agreements, even those agreements, as here, which were specifically approved by county

14

commissions. We are convinced that county commissions simply cannot contract away their plenary powers under K.S.A. 19-3601 et seq.

However, Lansing's notice still serves to terminate the Agreement. The required notice was sent, and the other provisions of the Agreement presumably remained in effect until termination. As a practical matter, the Fire District remains in operation, but the joint board no longer determines who serves on the board of trustees.

*It is unnecessary to reach Lansing's argument about its rights under its home rule powers.*

In its final issue on appeal, Lansing argues that the BOCC could not have created the Fire District under K.S.A. 19-3601 et seq. and that the Fire District was instead created by the Agreement through the utilization of home rule powers. In an amicus brief, the League of Kansas Municipalities urges this court to find that the district court erred when it determined that municipalities cannot contravene statutes of statewide application. Instead, the amicus curiae argues that the key distinction is whether the relevant statutes are uniform throughout the State.

We note that Lansing failed to raise this issue before the district court reached its initial decision. However, in light of our holding that the power to create, dissolve, or alter fire districts to include new lands or exclude lands resides exclusively with Kansas boards of county commission under K.S.A. 19-3601 et seq., we find it unnecessary to address Lansing's home rule argument in this appeal.

Affirmed.

15