NOT DESIGNATED FOR PUBLICATION

No. 123,458

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of CHRISTOPHER V. STRAITH, a/k/a DUSTIN J. STRAIT.

MEMORANDUM OPINION

Appeal from Brown District Court; JAMES A. PATTON, judge. Opinion filed July 9, 2021. Affirmed.

*Dustin J. Strait*, appellant pro se.

*Jerry C. Edwards*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM:  Christopher V. Straith, also known as Dustin J. Strait, a patient in the Kansas Sexually Violent Predator Treatment Program, requested an independent evaluation after his annual report recommended that he was not ready for transitional release from the program. The district court denied Straith's request, finding that Straith's progress in the program did not justify the cost of an independent examination. Because we find that the district court did not abuse its discretion in denying an independent examination, we affirm the district court's decision.

Straith also asserts, for the first time on appeal, that his court-appointed attorney was ineffective. But we find that Straith had no statutory right to a court-appointed attorney to file a request for an independent evaluation and, even if he did, he is unable to

1

establish that his attorney was ineffective or that he was prejudiced by his attorney's conduct.

FACTUAL AND PROCEDURAL HISTORY

Straith was admitted to the Sexual Predator Treatment Program (SPTP) in March 2001. His admission was the result of his conviction for one count of aggravated indecent liberties with a child after sexually assaulting a nine-year-old boy he had just met at a swimming pool.

On March 18, 2020, Straith acknowledged receiving his annual notice of right to petition for release from treatment over the Secretary of Corrections' objection. The notice informed him that clinicians concluded that his mental abnormality or personality disorder had not so changed that he would be safe to be placed in transitional release. The annual report, Secretary's notice, and Straith's acknowledgement were sent to the district judge assigned to the case.

The report, prepared by Scott Wilson, a licensed clinical psychologist, and Marc Quillen, a psychologist, stated that Straith admitted to having approximately 22 victims ranging from the age of 3 to 12—although in his most recent interview Straith reported 49 victims. According to the report, Straith was on Tier Two of the SPTP, which seeks to begin the process of moving from the highly structured inpatient program toward independent living. While in Tier Two, Straith obtained the highest levels of privileges available to a resident.

Straith was diagnosed with pedophilic disorder, a mild stimulant use disorder, and narcissistic personality disorder. According to his therapist, within the last year Straith participated in both an advanced relapse prevention and an emotional regulation supplemental therapeutic group. He also attended all of his groups and classes and

provided appropriate excuse slips when unable to do so. He participated minimally to moderately in group discussions and provided insightful feedback to other group members. His journal and fantasy logs included no deviant fantasies. He also participated in at least one individual therapy session each quarter and requested additional sessions as needed.

In the last year, Straith had no documented disciplinary issues. He had one minor verbal altercation with a peer, but it was quickly resolved and there was no punishment involved.

Wilson administered the Static-99R-2003, an actuarial instrument which seeks to estimate the probability that a convicted adult male sex offender will reoffend in the future, on Straith. The Static-99R-2003 indicated that Straith had an above average risk for reoffending. The ACUTE-2007, another risk assessment tool which measures factors that may change rapidly, indicated that Straith had a low priority for general recidivism and a low priority for sex and violence risk. The STABLE-2007, which seeks to assess change in intermediate-term risk status, assess treatment needs, and help predict recidivism, placed Straith in a moderate treatment need category. The three tools combined placed Straith in a low risk or need category.

The report also utilized the MMPI-2-RF, a broad-band test designed to assess major patterns of personality and psychological disorders. According to the report, Straith's "response style produced an [i]nvalid profile, suggesting excessive and inconsistent false responding on the instrument items."

In his interview before the report was created, Straith was questioned about some of his artwork. Apparently, his treatment team did not think that he had "processed the appropriateness of [his] artwork enough." Straith indicated that he did not think the treatment team was correct and that his artwork was not a problem. When asked about his

3

plans for the upcoming year, Straith said that he wanted to reach an understanding with the administration regarding his artwork. Straith reported that he was a "'sadomasochist, I enjoy pain, I enjoy giving it out, to a point. I enjoy the masochistic part more. I have not engaged in any of that since before this program.'" He indicated that his artwork "falls into the category of epic adventure fantasy, hack and slash fantasy and high fantasy, meaning a group of characters go on some adventure, use swords, axes and other weapons in fighting some evil creature and use magic." He claimed that staff members have erroneously classified his artwork as sadistic and his character résumés as sexually explicit. These include a picture of an elf and human sword fight, "a Borg Drone . . . and a Terminator fighting" in which "the Terminator had a hold of the Drone by his throat and had a gun to his head," as well as files containing pictures he has drawn of weapons or clipped out of magazines. He believes he has proven that his artwork is not inappropriate for him, and regular use of the polygraph would prove that he is not using the artwork for an inappropriate purpose.

Ultimately, the report concluded that Straith remained a sexually violent predator as defined by Kansas law.

On May 7, 2020, Straith filed a pro se petition seeking an independent examination.

On June 5, 2020, the district court denied Straith's petition without a hearing. The district court noted that it appeared that Straith "complies with the rules and regulations when he deems it advantageous to him" and that his responses to the MMPI-2-RF "resulted in an invalid profile." The court reasoned that while Straith was compliant and successful in some aspects of his treatment, his overall behavior and performance did not merit an independent examination and the cost of an independent examination was not justified.

Straith timely appeals.

ANALYSIS

A person committed under the Kansas Sexually Violent Predator Act (KSVPA) is entitled to a current examination of his or her mental condition once every year—the annual report. K.S.A. 2020 Supp. 59-29a08(a). After said examination, a person "must file a request for an annual review hearing within 45 days after the date the court files the annual written notice." K.S.A. 2020 Supp. 59-29a08(b). Failure to do so waives the person's right to a hearing until the next annual report. K.S.A. 2020 Supp. 59-29a08(b). "A contested annual review hearing for transitional release shall consist of consideration about whether the person is entitled to transitional release." K.S.A. 2020 Supp. 59-29a08(b). As part of the annual review hearing, the committed person may ask the court to appoint an independent examiner. The appointment is discretionary with the court. In making the decision, the court considers several factors, including the person's compliance with institutional requirements and the person's progress in treatment. K.S.A. 2020 Supp. 59-29a08(c). At the annual review hearing, the burden of proof is on the patient "to show probable cause to believe that person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." K.S.A. 2020 Supp. 59-29a08(d).

Straith raises two issues on appeal. First, he argues that the district court abused its discretion by not appointing an independent examiner for his annual review hearing. Next, he argues that his appointed counsel was ineffective.

*The district court did not abuse its discretion in denying Straith's request for an independent examiner.*

District courts have discretion to determine whether to appoint an independent examiner for an annual review hearing. K.S.A. 2020 Supp. 59-29a08(c). In making the decision, the court considers several factors, including the person's compliance with institutional requirements and the person's progress in treatment. K.S.A. 2020 Supp. 59-29a08(c). We review a district court's decision on whether to appoint an independent examiner at the annual review stage for abuse of discretion. *In re Care & Treatment of Twilleger*, 46 Kan. App. 2d 302, 310, 263 P.3d 199 (2011). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

Upon reviewing the record, we cannot say that the district court abused its discretion by denying Straith's request for an independent examiner. Although the ACUTE-2007 and STABLE-2007 placed Straith at a low risk of reoffending, the Static-99R-2003 placed him in an above average risk of reoffending category. And, as the district court noted in its decision, there were indications that Straith was not entirely honest in his psychological testing. Moreover, there was a continued problem with the appropriateness of Straith's artwork.

While there are indications that Straith is making good progress in the treatment program, there remain areas of concern. Because there is no allegation that the district court made an error of fact or an error of law when it reached its decision, the question before this court is whether the district court's decision to deny Straith's request for an independent examiner was arbitrary, fanciful, or unreasonable. See *Ingham*, 308 Kan. at 1469. Given the record before us, we cannot find that it was. Thus, the district court did not abuse its discretion.

*Straith was not denied the effective assistance of counsel.*

For the first time on appeal, Straith claims that his attorney, William R. McQuillan, was ineffective because he failed to send Straith any of the State's filings and failed to notify him that there were errors in his pro se request for an independent evaluation.

*Our standard of review is unlimited.*

We must first determine if Straith had a statutory right to an attorney in filing his request for an independent examiner. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). If he had such a right, we then review whether counsel was ineffective using the standards set out in *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 20-21, 287 P.3d 855 (2012).

*Straith did not have a statutory right to counsel in his request for an independent examiner.*

The Kansas Supreme Court "has held that when there is a right to counsel there is necessarily a correlative right to effective counsel—regardless of whether the right derives from a statute or the constitution." *In re Ontiberos*, 295 Kan. at 20. Straith's right to counsel here is—at most—a statutory one. See K.S.A. 2020 Supp. 59-29a08(e) ("The person shall have a right to have an attorney represent the person at the annual review hearing to determine probable cause."). The section of the KSVPA pertaining to the annual review—K.S.A. 2020 Supp. 59-29a08—does not provide the right to an attorney at any other stage of the annual review hearing proceeding.

7

Straith's petition dealt only with the request for an independent evaluation. The focus was on his belief that the persons that completed his review were improperly viewing his artwork as evidence that he was not ready for transitional release. He believed an independent evaluator "would state something along the lines of, *'I may not agree with the nature of his artwork, but as long as he is passing his polygraph examinations, that shows he is being truthful about it.'*" The statutory right to court appointed counsel does not attach to a request for an independent evaluation—only to a probable cause determination *at the annual hearing*. There was never a probable cause determination or an annual hearing here so his statutory right to counsel did not attach.

But even if he had such a right, Straith fails to show that he availed himself of court-appointed counsel and that counsel's performance was deficient.

*Straith cannot succeed on a claim of ineffective assistance of counsel when he elected to proceed pro se.*

"[A] finding of ineffective assistance of counsel based on deficient performance in a KSVPA proceeding requires a determination that (1) counsel's performance was deficient; and (2) counsel's deficient performance was sufficiently serious to prejudice the respondent and deprive him or her of a fair trial." *In re Ontiberos*, 295 Kan. at 31. Straith bears the burden of proof. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007).

The parties agree that Straith had an appointed attorney available to advise him. In 2016, William R. McQuillan was appointed to represent Straith after he filed a pro se petition for discharge or transitional release. McQuillan continued to represent Straith through an appeal of the district judge's denial of his request for an independent examiner. See *In re Care & Treatment of Strait*, No. 116,767, 2017 WL 2403351 (Kan. App. 2017) (unpublished opinion). He continued to appear on Straith's behalf at the 2018 annual review hearing. Later in 2018, Straith filed another pro se petition for discharge or

8

transitional release. At the same time, Straith filed a request for court-appointed counsel. The court noted that "McQuillan remains appointed." McQuillan appeared on Straith's behalf at the hearing on his petition. The court also noted that all of Straith's filings should be provided to McQuillan "so all legal requirements are met." The district court denied Straith's request for an independent examiner and denied his request for transitional release.

Straith also had an attorney, Gerald G. Wells, representing him in a K.S.A. 60-1501 appeal to this court. *Strait v. State*, No. 120,496, 2020 WL 288540 (Kan. App. 2020) (unpublished opinion).

Following receipt of the 2020 annual review, Straith filed a pro se "Petition for Independent Evaluation." The record does not reflect that he sent a copy of the motion to McQuillan or that he filed a request for court-appointed counsel as he had in the past. The State pointed this out in its response to Straith's petition.

> "The Respondent filed his Petition pro-se, however [after] a review of the record it appears he is currently represented by counsel. Courts have stated that '[w]hile a party has a right to represent himself or herself or be represented by counsel, he or she does not have the right to hybrid representation.' *State v. Homes*, 278 Kan. 603, 620[, 102 P.3d 406] (2004) citing *State v. McKessor*, 246 Kan. 1, 12[, 785 P.2d 1332] (1990)."

The State asked that Straith's petition be struck because he was not entitled to hybrid representation. The district court did not strike the petition but denied Straith's request for an independent evaluation based on the written filings and court record. A copy of the court's order was mailed to Straith.

Straith claims that attorney McQuillan was ineffective because he failed to send Straith any of the State's filings and failed to notify him that there were errors in his pro se request for an independent evaluation. We first examine whether McQuillan's

9

representation was deficient. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

The only State filing related to Straith's petition was the State's response to his petition. The record reflects that a copy of the State's response was "served on all counsel of record through the Court's electronic filing system." There is no indication that Straith ever received a copy of the State's response, even though it was clear he was proceeding pro se. But there is also no indication that Straith ever requested any assistance from McQuillan or even advised him of his pro se filing as the district court had ordered him to do two years earlier. We cannot find McQuillan's representation to be deficient when there is no indication in the record on appeal that McQuillan ever knew of or was given the opportunity to approve Straith's pro se filing. Straith chose to file his petition pro se knowing—based on prior hearings—that the court considered McQuillan a continuing appointment as his attorney. Once he made that election, he cannot now claim McQuillan was ineffective for not providing advice to him.

*Straith does not show that he was prejudiced by McQuillan's representation.*

Next, even if we were to find McQuillan's representation deficient, Straith must still show that he was prejudiced by McQuillan's deficient performance. Straith only lists two specific claims of prejudice (1) "if appellant would have been aware of the [State's] response, the appellant could have responded accordingly"; and (2) "I filed an independent evaluation, which I messed up on. At no time after filing [it] did my court appointed lawyer contact me that my filing was wrong, or messed up." Straith does not indicate how he would have responded to the State's response had he known about it and why it would have been a successful argument. Second, he does not indicate how his initial request was "messed up." The district court did not point to any deficiencies in the request itself, only that it was not persuaded that an independent evaluation was merited.

10

So even if we were to find McQuillan's representation deficient, Straith has failed to carry his burden to show he was prejudiced by it.

For these reasons, we affirm the decision of the district court denying Straith's request for the appointment of an independent examiner.

Affirmed.