IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,271

CHARLES NAUHEIM d/b/a KANSAS FIRE AND SAFETY EQUIPMENT, and
HAL G. RICHARDSON d/b/a BUENO FOOD BRAND, TOPEKA VINYL TOP, and
MINUTEMAN SOLAR FILM,
*Appellants*,

v.

CITY OF TOPEKA, KANSAS,
*Appellee.*

SYLLABUS BY THE COURT

1.

Statutory interpretation presents a question of law subject to de novo review. When interpreting a statute, a court first attempts to discern legislative intent through the statutory language, giving common words their ordinary meanings.

2.

Whenever federal funding is not involved, and real property is acquired by any condemning authority, K.S.A. 2017 Supp. 26-518 identifies two distinct situations requiring the authority to pay relocation benefits to a displaced person: (a) when the acquisition occurs through negotiation in advance of a condemnation action, or (b) when the acquisition occurs through a condemnation action.

3.

Not every acquisition of real property by a condemning authority is covered by K.S.A. 2017 Supp. 26-518.

1

4.

The phrase "negotiation in advance of a condemnation action" in K.S.A. 2017 Supp. 26-518 is both temporal and contextual. To be entitled to relocation benefits, a displaced person must show: (a) negotiation resulted in the property's acquisition before any eminent domain proceedings commenced; and (b) a condemnation would have followed had that negotiation failed.

5.

Whether a negotiation was in advance of a condemnation action under K.S.A. 2017 Supp. 26-518 is a question of fact to be established by a preponderance of the evidence. A preponderance of the evidence means evidence that shows a fact is more probably true than not true.

6.

A finder of fact should consider any relevant evidence that might reasonably bear on establishing whether a negotiation was in advance of a condemnation action under K.S.A. 2017 Supp. 26-518. Evidence is relevant if it tends to establish a material fact at issue.

Review of the judgment of the Court of Appeals in 52 Kan. App. 2d 969, 381 P.3d 508 (2016). Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed January 11, 2019. Judgment of the Court of Appeals reversing the district court is affirmed on the issue subject to review. Judgment of the district court is reversed, and the case is remanded.

*John R. Hamilton*, of Hamilton, Laughlin, Barker, Johnson & Jones, of Topeka, argued the cause, and *David A. Brock*, of the same firm, was with him on the brief for appellants.

*Shelly Starr*, assistant city attorney, argued the cause and was on the brief for appellee.

2

The opinion of the court was delivered by

BILES, J.: Whenever federal funding is not involved, and real property is acquired by a condemning authority through negotiation in advance of a condemnation action or through a condemnation action, the authority must pay relocation benefits to any person who moves from the property as a direct result of the acquisition. K.S.A. 2017 Supp. 26-518(a) (condemning authority's duties to displaced person in acquiring real property); 42 U.S.C. § 4601(6)(A)(i)(I) (2012) (definition of displaced person). This appeal seeks to define what the statutory phrase "negotiation in advance of a condemnation action" means. The dispute arises from a claim by former tenants for relocation benefits after the City of Topeka negotiated and acquired property where the tenants operated their businesses.

We hold the statute is both temporal and contextual, so it is a question of fact whether a negotiation was in advance of a condemnation action. We reject the tenants' contention that displaced persons are owed relocation benefits anytime a condemning authority acquires real property for a public project. The statute is not that generous.

We affirm the Court of Appeals' judgment although we see the potential evidence that might prove such a claim more expansively than the panel did. See *Nauheim v. City of Topeka*, 52 Kan. App. 2d 969, Syl. ¶ 5, 381 P.3d 508 (2016) ("[A] displaced person must prove that the condemning authority either threatened or took affirmative action towards condemnation prior to the acquisition."). The case is remanded for the district court to determine whether condemnation would have followed had the City's negotiation with the property owner failed.

FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the City authorized by ordinance a public works project to replace a structurally deficient drainage system on a tributary to Butcher Creek to alleviate potential flooding within the city limits. The authorizing language did not mention condemnation. After exchanging terms with the owner during 2013, the City bought real property where commercial tenants operated their businesses. During the negotiation, the City made clear it wanted the property vacant before obtaining title. The owner complied, and the transaction concluded without the City exercising its eminent domain power.

Charles Nauheim and Hal G. Richardson, the former tenants, relocated their respective businesses to other property. They sued the City for relocation costs under K.S.A. 2017 Supp. 26-518, which states:

"Whenever federal funding is not involved, and real property is acquired by any condemning authority through negotiation *in advance of a condemnation action* or through a condemnation action, and which acquisition will result in the displacement of any person, the condemning authority shall:

"(a) Provide the *displaced person*, as defined in the federal uniform relocation assistance and real property acquisition policies act of 1970, fair and reasonable relocation payments and assistance to or for displaced persons." (Emphases added.)

The City argued the statute did not apply because it never intended to condemn the property had the negotiation failed. It also contended neither tenant was a "displaced person" as statutorily defined. The City claimed the tenants relocated because of agreements with the property owner—also their landlord. All parties moved for summary judgment.

4

The district court granted the City's motion. It held the tenants were not displaced persons as defined by law. It also found the uncontroverted facts proved the property acquisition was not made "in advance of a condemnation action," but occurred instead by the City exercising its corporate power. The tenants appealed.

A Court of Appeals panel considered three issues: (1) Whether the tenants were displaced persons as defined by K.S.A. 2017 Supp. 26-518(a) and 42 U.S.C. 4601(6)(A)(i)(I); (2) whether the phrase "negotiation in advance of a condemnation action" in K.S.A. 2017 Supp. 26-518 required a displaced person to prove a condemning authority's intent to condemn; and (3) whether the summary judgment record supported the City's claim it never intended to condemn the property. The panel affirmed in part, reversed in part, and remanded for the district court to resolve disputed material facts. *Nauheim*, 52 Kan. App. 2d at 970.

As to the first question, the panel reversed the district court and held the tenants qualified as displaced persons because "the City's acquisition of the subject property was contingent upon the property being vacant at the time of closing." 52 Kan. App. 2d at 973. In its view, no other motive existed "for the landlord to force the tenants to relocate from the property other than the fact that it was a necessary prerequisite for the sale of the property to the City." 52 Kan. App. 2d at 974. Therefore, the panel continued, the tenants' relocation "was an event that was inseparably linked to the sale." 52 Kan. App. 2d at 975.

As for the meaning of the statutory phrase "negotiation in advance of a condemnation action," the panel agreed with the district court that it required a displaced person to show a condemning authority intended to condemn the subject property by proving it "either threatened or took affirmative action towards condemnation prior to the acquisition." 52 Kan. App. 2d 969, Syl. ¶ 5. The panel reasoned:

5

"Not every acquisition made by a condemning authority is covered by the statute, only those acquisitions that are done 'through negotiation in advance of a condemnation action or through a condemnation action.' To interpret K.S.A. 2015 Supp. 26-518 in the fashion urged by the tenants, the phrase 'in advance of a condemnation action' would be rendered mere surplusage. We presume that the legislature does not intend to enact useless legislation, and we are obligated to interpret a statute so that part of it does not become surplusage." 52 Kan. App. 2d at 977.

The panel also determined a genuine issue of material fact remained about whether the City negotiated with the landlord in advance of a condemnation action. 52 Kan. App. 2d at 979-80. The panel noted the record included emails from City staff and the landlord's affidavit supporting an argument that the City intended to condemn the property if negotiation failed. These disputed facts made summary judgment improper, the panel held. 52 Kan. App. 2d at 979. It reversed and remanded the case to the district court for further proceedings.

The tenants petitioned this court to review the statutory interpretation question, especially the panel's decision that a displaced person must prove a condemning authority threatened condemnation or took affirmative action to condemn the property before acquisition. We granted review. Jurisdiction is proper. K.S.A. 20-3018(b) (petitions for review of Court of Appeals decision); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

The City does not cross-petition on the issues the panel decided adversely to its argument, i.e., whether the tenants were displaced persons and whether disputed material facts prevented summary judgment. That much is settled on review in the tenants' favor. See Supreme Court Rule 8.03(b)(6)(C)(i) (2019 Kan. S. Ct. R. 53) (as amended July 1, 2018); *In re Adoption of C.L.*, 308 Kan. 1268, 1277, 427 P.3d 951 (2018); *Ullery v. Othick*, 304 Kan. 405, 415, 372 P.3d 1135 (2016).

6

ANALYSIS

The tenants argue they should not have to prove the City had an intent to condemn to receive statutory relocation assistance. We disagree. But we hold the evidence that might prove whether an acquisition occurred through "negotiation in advance of a condemnation action" is broader than the panel's perspective.

*Standard of review*

Statutory interpretation presents a question of law subject to de novo review. *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1002, 425 P.3d 1253 (2018). When interpreting a statute, a court first attempts to discern legislative intent through the statutory language, giving common words their ordinary meanings. *Whaley v. Sharp*, 301 Kan. 192, 196, 343 P.3d 63 (2014). When the language is plain and unambiguous, the court must give effect to its express language, rather than determine what the law should be. The court will not speculate about legislative intent and will not read the statute to add something not readily found in it. *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 3, 161 P.3d 695 (2007). It is only when the statute's language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain its meaning. *Whaley*, 301 Kan. at 196.

*Discussion*

Municipalities can acquire or receive property for municipal purposes without resorting to condemnation. See K.S.A. 12-101, Second (authority to purchase or receive real property for city use); K.S.A. 12-101, Fourth (authority to make contracts relating to property). They can also acquire property for municipal purposes through condemnation under the Kansas Eminent Domain Procedure Act, K.S.A. 2017 Supp. 26-501 et seq.

The tenants, of course, argue they should not need to file a lawsuit and prove the City's intention to condemn had the negotiation failed. They contend that since their property was acquired by a condemning authority through negotiations, this necessarily means the authority acquired it "in advance of" condemnation. They claim this is the statute's plain meaning. They also assert the statute is "designed to provide relocation assistance in order to avoid putting the burden and expense of a public benefit on individuals." They further argue, "[T]he taxes of the public should pay for the damages incurred as a result of the public project." Forcing displaced persons to sue and prove facts about a condemning authority's intentions, they claim, is contrary to legislative intent.

Also predictably, the City argues the statute does not apply. It claims the lower courts' approach "is a reasonable, practical standard fulfilling both the intent of the legislature and the plain language of the statute." The City characterizes as unreasonable any rule that a condemning authority pay relocation costs "each and every time it acquired property . . . ." Finally, the City contends the evidentiary record shows it "was not poised to condemn this property and could have completed the project without acquiring the property."

The panel held that if the statute did not require a displaced person to prove a condemning authority's intent to condemn when the acquisition was done through negotiation, the authority would always have to provide relocation benefits when it acquired real property. 52 Kan. App. 2d at 977. The district court had the same view and explained,

"According to [the tenants'] suggested reading of K.S.A. 26-518, every
negotiation conducted by a condemning authority—regardless of how the acquisition is

8

being made—would be 'in advance of a condemnation action' simply because the condemning authority holds that option to condemn. Put another way, under this reading, there would never be a negotiation not in advance of a condemnation action, and the condemning authority would have to pay relocation benefits for every acquisition. Such an interpretation is clearly against the legislative intent behind K.S.A. 26-518, because the legislature added the qualifier 'through negotiation in advance of a condemnation action or through a condemnation action.'"

As we see it, K.S.A. 2017 Supp. 26-518 identifies two distinct situations in which a condemning authority must provide relocation benefits to a displaced person:  (1) when the acquisition occurs through negotiation before a condemnation action, or (2) when the acquisition occurs through a condemnation action.

As to the first circumstance, and as readily seen, the statute does not provide that anytime a condemning authority acquires property it must pay relocation benefits. Instead, those benefits are available when property is acquired "in advance of a condemnation action." It plainly does not state relocation benefits are paid as part of any public project. And all agree the latter circumstance, i.e., acquisition through a condemnation action, is not involved here. K.S.A. 2017 Supp. 26-501 through 26-518 and K.S.A. 2017 Supp. 26-501a and 26-501b set out the procedure for exercising eminent domain power. K.S.A. 2017 Supp. 26-501(a); see also *Creegan v. State*, 305 Kan. 1156, 1160, 391 P.3d 36 (2017). And before starting a condemnation action, a city must adopt and publish a resolution authorizing eminent domain proceedings. K.S.A. 2017 Supp. 26-201; see also *General Building Contr., L.L.C. v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 536-38, 66 P.3d 873 (2003). None of that happened here.

Returning to the statutory phrase "negotiation in advance of a condemnation action," the language is both temporal and contextual. To be entitled to relocation benefits, a displaced person must show:  (1) a negotiation resulted in the property's

acquisition before any eminent domain proceedings commenced; and (2) a condemnation would have followed had that negotiation failed. A plain reading of the statute demonstrates this.

The first element is temporal as seen by the phrase "in advance of." In ordinary usage, "in advance" is defined as "before . . . an anticipated event." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/advance; see also Webster's New World College Dictionary 20 (5th ed. 2016) ("in advance" is defined as "in front," "before due," and "ahead of time"). And the word "anticipate" is generally understood to mean "to look forward to; expect." Webster's New World College Dictionary 61 (5th ed. 2016). This timing element is not in dispute in this case, and it is difficult to imagine when it would be.

The second element is where our present controversy lies. It provides that the negotiation occur in a context in which eminent domain would have followed had negotiations failed to secure the property for the condemning authority. But does this mean, as the district court held, that "negotiation in advance of a condemnation action" occurs "*only* once a municipality has threatened condemnation or has taken some affirmative step towards instituting a condemnation action, *and* when the municipality has entered negotiations for purposes of efficiency and fairness as to the condemnation action"? (Emphases added.) The panel thought so, but we conclude this too narrowly construes what evidence might show entitlement to benefits. Whether a negotiation is in advance of a condemnation action is a question of fact a claimant needs to prove by a preponderance of the evidence.

> "We have defined preponderance of the evidence as "'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." Black's Law Dictionary 1182 (6th ed. 1990). In other words, a "preponderance of the

10

evidence" means that evidence which shows a fact is more probably true than not true.' [Citations omitted.] Because this standard 'results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake."' [Citations omitted.]" *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008).

When determining whether a plaintiff meets that burden, the finder of fact should consider any relevant evidence that might reasonably bear on this disputed question. Evidence is relevant if it tends to establish a material fact at issue. K.S.A. 60-401(b). "All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision." *Kansas City Power & Light Co. v. Strong*, 302 Kan. 712, 729, 356 P.3d 1064 (2015).

The lower courts erred by requiring a specific evidentiary showing that the condemning authority either threatened or took affirmative action towards a condemnation action. And while that evidence would be relevant, it is surely not the only evidence that could cause a fact-finder to conclude a condemning authority would have resorted to eminent domain after unsuccessful negotiation.

The record in this case highlights our point—without so narrowly requiring a specific threat, affirmative action, or even proof of actual intent. It includes: (1) the City's Ordinance No. 19553, which authorized the project but never mentioned condemnation; (2) an engineering study providing two options to address the Butcher Creek drainage issues, one of which did not require the property acquisition; (3) City staff emails; and (4) City officials' statements, reflected in an affidavit supplied by the landlord.

11

For example, three emails written during negotiations reflect:

(1)     In July 2013, the City's real estate officer told the landlord:

"The Deputy City Attorney is concerned that the lease will allow the tenant to stay beyond the 60-90 days and force the City to condemn their lease interest and force us to pay relocation expenses, etc. I know you are working on some kind of arrangement with them, so you may already have a resolution. But we will not be able to move forward until that lease interest is resolved."

(2)     In August, the City's deputy attorney told the landlord:  "I don't want the City to have to exercise its eminent domain power to purchase the leasehold interest of [a tenant's business] should [that tenant] refuse to move to its new location."

(3)     In October, the real estate officer again told the landlord:

"I suppose, if we do not close this transaction, that the City will then have to condemn to get these properties. That is not a sure thing, as City management has been very reluctant to use condemnation [and] the City Council is not happy to see that going on.

"I guess we will wait until we get closer to closing to see where we stand."

And the landlord's affidavit plainly states, "Through conversations with at least two representatives, *the City of Topeka indicated to Affiant that if negotiations failed, the City would then have to condemn the properties*." (Emphasis added.)

To be sure, the City has arguments demonstrating its counterpoint, which is why the panel correctly remanded for the district court to resolve disputed facts, despite

12

incorrectly imposing a higher evidentiary burden than the tenants would need to prevail. Summary judgment is appropriate only when the material facts are uncontroverted. K.S.A. 2017 Supp. 60-256(c)(2); see also *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). Further proceedings are necessary to explore whether the City's negotiations were in advance of a condemnation action under K.S.A. 2017 Supp. 26-518.

Judgment of the Court of Appeals reversing the district court is affirmed on the issue subject to review. Judgment of the district court is reversed, and the case is remanded.