NOT DESIGNATED FOR PUBLICATION

No. 122,810

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KELLY ROE,
*Appellee*,

v.

PHILLIPS COUNTY HOSPITAL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Phillips District Court; PRESTON PRATT, judge. Opinion filed February 11, 2022.
Reversed and remanded with directions.

*Russell J. Keller, Keynen J. Wall,* and *Quentin M. Templeton*, of Forbes Law Group, LLC, of
Overland Park, and *John F. McClymont*, of McClymont Law Office, PA, of Norton, for appellant.

*Kelly Roe*, appellee pro se.

*Maxwell E. Kautsch*, of Kautsch Law, L.L.C., of Lawrence, amici curiae Kansas Press
Association, Inc., et al.

Before WARNER, P.J., BUSER and CLINE, JJ.

BUSER, J.:  This is an interlocutory appeal by the Phillips County Hospital
(Hospital) of the district court's granting of partial summary judgment in favor of Kelly
Roe in her lawsuit brought under the Kansas Open Records Act (KORA), K.S.A. 45-215
et seq.

1

In her cause of action, Roe contends the Hospital violated KORA by failing to provide her with copies of public records in the exact format she specified—in this case, the native-based electronic format. The Hospital repeatedly offered Roe the opportunity to inspect or receive hard copies of the original electronic records. However, Roe asserted that KORA requires public agencies to produce copies of public records in the format requested. The district court agreed, ruling that "the public records must be provided in the format requested if the public agency has the capability of providing the records in that format." Concluding that the Hospital could provide the requested electronic records in their native-based electronic format, the district court granted partial summary judgment to Roe.

On a related issue, the Hospital also appeals the district court's ruling denying its motion to seal, to strike, and for sanctions because, it alleges, communications that Roe secretly recorded during the Hospital's executive session on November 16, 2017, are protected by the attorney-client privilege.

Upon our review, we conclude the district court erred as a matter of law in ruling that under KORA, public records must be provided in the format requested if the public agency has the capability of providing the records in that format. More specifically, we hold that KORA does not require a public agency to produce electronic public records in the format of the requester's choice—such as a native-based electronic format—if the agency has the capability of producing the record in that requested format.

Moreover, we hold the district court also erred as a matter of law in declining to seal and strike communications that were protected by the attorney-client privilege. Accordingly, we reverse and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

The Hospital is a public agency within the meaning of K.S.A. 2020 Supp. 45-217(f). As a result, it is subject to KORA. Roe served as a trustee on the Hospital's Board of Trustees (Board) for about two years until she resigned on February 15, 2019.

Three days after her resignation, on February 18, 2019, Roe sent the Hospital a KORA request for records. Roe sent additional KORA requests to the Hospital on February 28, 2019; March 1, 2019; March 14, 2019; April 29, 2019; June 4, 2019; and July 8, 2019. These KORA requests sought the production of the following public records available in their native-based electronic format or hard copies delivered by fax if not available in electronic format:  Hospital documents, Board meeting minutes with accompanying handouts and packets, Excel and PowerPoint presentations and files, slides, newsletter, CEO reports of purchases and employment evaluation, and documents regarding a CT scanner and ultrasound machine. The requested materials were mostly related to at least seven different Board meetings.

On February 20, 2019, the Hospital answered Roe's first KORA request, stating that it would not provide Roe with electronic records because "[n]either the Kansas Open Records Act nor the [Hospital's Open Records] Policy allow for native-based electronic production or the faxing of documents, as you requested." The Hospital attached a copy of its Open Records Policy. This policy did not explicitly exclude native-based electronic copies, but it expressly stated that requested documents would be provided by photocopies or access/inspection of the records. In its letter, the Hospital stated:  "Please let us know if you want copies of the requested records or want to view the records at the Hospital." The Hospital also asked Roe if she wanted an estimate of the fees associated with the document production. Consistent with KORA, the Hospital's policy required requestors to prepay the costs associated with KORA requests.

3

In subsequent refusal letters responding to Roe's additional requests, the Hospital referred to its policy and noted that it did not allow for native-based electronic production or the faxing of documents. In response to Roe's fifth and sixth requests for native-based electronic documents, the Hospital stated that Roe was "well aware of [the] policy." In a letter dated May 28, 2019, the Hospital's attorney advised that, contrary to Roe's request, the hospital would not provide her with a computer terminal to inspect computer files, but it would provide hardcopy documents for her inspection.

Roe noted that her requests for electronic copies were denied even though it is undisputed that the Hospital regularly uses computer programs to create electronic files, the Hospital regularly sends emails to the members of its Board containing electronic files, the Hospital regularly shows PowerPoint presentations and Excel spreadsheets at its open Board meetings, and individual cells in Excel spreadsheets may contain formulas or references to other spreadsheets or records.

Beginning on February 21, 2019, Roe filed numerous complaints with the Kansas Attorney General regarding the Hospital's refusal to provide her with the requested records in their original, native-based electronic format. On May 29, 2019, before the Attorney General had responded to any of her complaints, Roe filed a lawsuit in the district court to enforce her right to receive the records as requested under KORA. Roe filed an amended petition on June 17, 2019.

On September 26, 2019, after investigating Roe's complaints against the Hospital, the Attorney General concluded that "KORA contains no language requiring records be provided in their native format. A public agency retains the discretion to determine the format in which the records are produced."

Roe and the Hospital filed competing motions for summary judgment. Roe's motion was filed on December 2, 2019. In her motion, Roe claimed summary judgment

4

was appropriate because KORA requires that all public records be disclosed to a requestor in the format requested if the public agency is capable of producing the records in that format. On January 2, 2020, the Hospital filed its motion for summary judgment, arguing that the Hospital did not violate KORA because KORA did not entitle Roe to native-based electronic copies of public records.

In her reply in support of summary judgment, Roe filed a transcript of a recording that she claimed she had made on November 16, 2017, during an executive session of the Hospital's Board meeting. In response, John McClymont, one of the Hospital's attorneys, sent a letter to the district court asking that Roe's reply be sealed and stricken because it contained a transcript from an executive session—which was closed for privileged attorney-client consultation under K.S.A 75-4319(b)(2)—and the disclosure of the contents of that meeting violated the attorney-client privilege.

The district court temporarily sealed the document for 14 days to allow the Hospital to file a motion under K.S.A. 2020 Supp. 60-2617, that gives the court discretion to seal court records after a hearing and a finding of good cause. Within the time allotted, the Hospital filed a motion to seal, to strike, and for sanctions under K.S.A. 2020 Supp. 60-2617. In response, Roe argued that the attorney-client privilege either did not apply or had been waived. The Hospital filed a reply, reprising its earlier arguments, and asking the district court to impose sanctions "to discourage Roe from further abusing her rights within the judiciary."

On April 7, 2020, the district court granted Roe's motion for summary judgment in part and denied the Hospital's competing motion for summary judgment. The court summarized the central issue in this case by using an analogy:

"This is a case in which Roe requested to buy an apple, but Hospital responded it will sell her an orange if she first pays for the orange. Roe's petition is based on alleged

5

KORA violations because she requested copies of public records in their native-based electronic format (the apple), but Hospital refused to provide electronic copies and insisted that only hard copies (the orange) be provided by printing the records and the standard photocopy charges being paid."

The district court concluded that "the public records must be provided in the format requested if the public agency has the capability of providing the records in that format." The district court granted partial summary judgment to Roe, finding that the Hospital "is capable of providing the records in electronic format . . . ." In entering the order, the district court acknowledged: "While true that KORA does not specifically say copies must be produced in electronic format, that is implied."

In addition, the district court also denied the Hospital's request to seal or to strike the disclosed transcript from the record as well as its request for sanctions. The district court ruled that the attorney-client privilege did not apply to the November 16, 2017, executive session because a third party was present during the session which meant the privilege did not apply. Additionally, the district court ruled the Hospital waived the attorney-client privilege regarding communications made during the executive session wherein a Kansas Open Meetings Act (KOMA), K.S.A. 75-4317 et seq. investigation was discussed.

In both rulings—the motion granting Roe partial summary judgment and the motion denying the motion to seal, to strike, and order sanctions—the district court provided findings to allow the parties to file an interlocutory appeal from its rulings and staying the matter pending appeal. The Hospital filed a notice of appeal from both rulings under K.S.A. 2020 Supp. 60-2102(c). Our court granted the interlocutory appeal on May 15, 2020.

DOES KORA REQUIRE A PUBLIC AGENCY TO PRODUCE ELECTRONIC PUBLIC RECORDS IN THE FORMAT OF THE REQUESTER'S CHOICE—SUCH AS A NATIVE-BASED ELECTRONIC FORMAT—IF THE AGENCY HAS THE CAPABILITY OF PRODUCING THE RECORD IN THAT FORMAT?

On appeal, the Hospital contends the district court erred in granting Roe's motion for summary judgment in part and ruling that KORA requires the Hospital to provide the electronic public records to Roe in the format she requested. The Hospital argues that the plain language of K.S.A. 2020 Supp. 45-219—read together and in harmony with related provisions of KORA—unequivocally shows that KORA does not require production of public records in native-based electronic format or the specific format requested by the party making the request.

Our court's standard of review on summary judgment provides:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

When parties have not provided any disputed facts relevant to the legal issue raised, an appellate court's review of an order granting or denying a motion for summary judgment is unlimited. *Becker v. The Bar Plan Mutual Insurance Company*, 308 Kan. 1307, 1311-12, 429 P.3d 212 (2018). In this appeal, the parties have not disputed any of

7

the facts that the other party asserts is uncontroverted as to the issue raised regarding the interpretation of KORA, so the facts are deemed admitted.

The Hospital, a public agency within the meaning of KORA, refused to produce copies or allow inspection by Roe of native-based electronic records it made, maintained, kept, or held in its possession at the time of her request, and in the manner in which she requested production. However, the Hospital advised that it would allow hard copies of the files to be inspected or provide hard copies to Roe. The Hospital does not contend that the requested electronic records are subject to any statutory exemption, nor does it claim the records do not exist (other than the McClymont report discussed later), or that it could not produce the computer files in their original native-based electronic format.

Resolving this issue calls for the statutory interpretation of certain provisions of KORA. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). This court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Nauheim*, 309 Kan. at 149. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Nauheim*, 309 Kan. at 149-50.

Of particular relevance to this appeal, even if "the court believes that the legislature has omitted a vital provision in a statute," the remedy lies solely with the Legislature unless the omitted provision can be found under any reasonable interpretation of the language actually used. *Bussman v. Safeco Insurance Co. of America*, 298 Kan. 700, 725, 317 P.3d 70 (2014); see *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013) ("No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one that the legislature alone can correct.").

Having briefly surveyed our general rules of statutory interpretation, we next summarize the relevant Kansas law relating to KORA. The records kept by a county hospital are public records as defined by KORA, K.S.A. 45-215 et seq., and, therefore, are subject to the provisions of KORA, including the provision of K.S.A. 2020 Supp. 45-221. Public record means any recorded information, regardless of form, characteristics, or location, which is made, maintained, kept, or possessed by any public agency. K.S.A. 2020 Supp. 45-217(g)(1)(A). All public records shall be open for inspection by any person under K.S.A. 45-218(a), and any person may make abstracts or obtain copies of any public record to which such person has access. K.S.A. 2020 Supp. 45-219(a). KORA provides limited specific exceptions to disclosure which are subject to the declared public policy of Kansas that public records shall be open for inspection by any person unless otherwise provided by KORA and shall be liberally construed and applied to promote such policy. *Hunter Health Clinic v. WSU*, 52 Kan. App. 2d 1, 11, 362 P.3d 10 (2015) (KORA must promote the public policy of openness). KORA shall be liberally construed to promote the public policy that public records should be open for inspection. K.S.A. 45-216.

We begin the analysis with a simple question: Does KORA's plain statutory language require a public agency to produce electronic public records in the format of the

9

requester's choice—such as a native-based electronic format—if the agency has the capability of producing the records in that requested format?

The Hospital focuses its argument on the fact that KORA does not explicitly provide any such statutory mandate: "Nowhere in this plain language does the legislature impose the burden on the public agency to accommodate requests for copies in specific formats or otherwise empower a person to compel reproduction in native-based electronic format."

For her part, at oral arguments, Roe candidly conceded that "that specific language" is not found in KORA. As she contended in her brief, however, Roe argued that a liberal construction of KORA implied such a requirement.

In its order, the district court answered the question this way: "*While true that KORA does not specifically say copies must be produced in electronic format*, that is *implied*." (Emphases added.) Later in its order the district court again candidly acknowledged: "Even though the Court has determined under Count 1 that Hospital must provide Roe with electronic copies, *that is not clearly stated within KORA*." (Emphasis added.) In essence, the district court adopted Roe's reasoning that the omission of explicit language is not determinative since KORA's provisions should be liberally construed to promote the policy of open records. See K.S.A. 45-216.

Our independent review of KORA's provisions reveals there is no plain statutory language which requires a public agency to produce electronic public records in the format of the requester's choice—such as a native-based electronic format—if the agency has the capability of producing the records in that format.

In this regard, it should be noted that KORA includes two limitations to accessing and copying electronic records. The first is found in K.S.A. 2020 Supp. 45-219(g), added

as an amendment in 2010, which limits the means by which the public may receive electronic copies:

> "Nothing in the open records act shall require a public agency to electronically make copies of public records by allowing a person to obtain copies of a public record by inserting, connecting or otherwise attaching an electronic device provided by such person to the computer or other electronic device of the public agency."

The second reference to electronic records in KORA is in K.S.A. 2020 Supp. 45-221(a)(16), which, exempts from disclosure "[s]oftware programs for electronic data processing and documentation thereof," with the caveat that "each public agency shall maintain a register, open to the public," that describes "[t]he information which the agency maintains on computer facilities" and "the form in which the information can be made available using existing computer programs." K.S.A. 2020 Supp. 45-221(a)(16)(A)-(B).

A plain reading of KORA, K.S.A. 2020 Supp. 45-221(a)(16) and K.S.A. 2020 Supp. 45-219(g), shows that while an agency may produce electronic records in response to an open records request, there is no *mandatory* language requiring a public agency to provide copies of electronic documents in their native-based electronic formats upon request.

It is a central tenet of statutory construction that when a statute is plain and unambiguous, an appellate court should refrain from reading something into the statute that is not readily found in its words. *Ullery*, 304 Kan. at 409. A court does not read into the statute words that are not found in the plain language of the statute. *Estate of Graber v. Dillon Companies*, 309 Kan. 509, 516, 439 P.3d 291 (2019). "'An appellate court merely interprets the language as it appears; it is not free to speculate and *cannot read into the statute language not readily found there*.'" (Emphasis added.) *Harsay v.*

11

*University of Kansas*, 308 Kan. 1371, 1381, 430 P.3d 30 (2018). "A court presumes the Legislature expressed its intent through the statutory language used." *Estate of Graber*, 309 Kan. at 516-17. As a result, *an appellate court's role is not to "delete provisions or supply omissions in a statute*." (Emphasis added.) *Prine*, 297 Kan. at 475.

In response to the district court's ruling that while no express statutory language requires disclosure in a particular requested format it is implied by KORA's liberal construction, the Hospital points out that the district court's interpretation goes beyond liberal construction. We agree. See *Barnes v. Board of Cowley County Comm'rs*, 47 Kan. App. 2d 353, 361, 274 P.3d 697 (2012) ("Although the legislature intended the Act to be liberally construed, when a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it.").

As an appellate court we are duty bound to apply the law as the Legislature enacted it, which is as expressed in the plain and ordinary statutory language. Upon our review, we find an absence of language that expresses the Legislature's intent under KORA to require public agencies to provide copies of electronic public records in their native, electronic format upon request. As a court, we will not add a requirement to KORA's inspection and copying provisions that the Legislature did not include in the plain language of the act.

To be clear, under KORA's plain language, a public agency's electronic records, unless specifically exempted under KORA, constitute public records that are subject to inspection and, if requested, copies provided to the requester. See K.S.A. 2020 Supp. 45-219(a); K.S.A. 45-218(a); and K.S.A. 2020 Supp. 45-217(g)(1)(A). While the Hospital declined to provide electronic records in their native, electronic format, it contends their offer to produce hard copies of those electronic records fulfilled the disclosure requirements under KORA. While Roe asserts that KORA mandates that the Hospital

12

provide computerized records in their electronic format, the Hospital insists that "[t]he plain meaning of K.S.A. 45-219(a) confirms that a public agency need only provide a substantively accurate reproduction of the original to the requesting party, regardless of the form or format, to satisfy its obligation under KORA to provide 'copies' upon request." In this regard, the district court found as an uncontroverted fact that the "Hospital offered to provide hard copies or allow Roe to view the records at the hospital."

Under KORA, a public agency's obligation is to provide "copies" of a public record, if requested. K.S.A. 2020 Supp. 45-219(a), K.S.A. 2020 Supp. 45-217(g)(1). The Hospital asserts that the plain and ordinary meaning of the word "copies" evidences the Legislature's clear intent. It contends that KORA permits a party to obtain reproductions of the original record, but nowhere in this plain language of the Act does the Legislature impose the burden on the public agency to accommodate requests for copies in specific formats or otherwise compel reproduction in a native-based electronic format.

What is meant by the term "copies"? Our Supreme Court has instructed that when a statute does not define a term, "[d]ictionary definitions are good sources for the 'ordinary, contemporary, common ' meanings of words." *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). In *Midwest Crane & Rigging, LLC*, our Supreme Court relied on Black's Law Dictionary and the Merriam-Webster Dictionary to define a statutory term.

Applying dictionary definitions to this case, Black's Law Dictionary defines "copy" as "[a]n imitation or reproduction of an original." Black's Law Dictionary 423 (11th ed. 2019). Similarly, the Webster's dictionary defines a "copy" as "a thing made just like another; imitation of an original; full reproduction or transcription." Webster's New World College Dictionary 328 (5th ed. 2014). It is apparent that the common usage and plain meaning of the term "copies" allows for reproductions which may involve numerous formats or mediums. Employing these dictionary definitions, we are persuaded

13

that, provided the public agency delivers an accurate reproduction of the original electronic records to the requester, KORA's requirement that a copy of the public record must be provided is satisfied.

While the Hospital maintains the plain language of K.S.A. 2020 Supp. 45-219(a) which provides that a person "may make abstracts or obtain copies of any public record to which such person has access under this act" is dispositive, it also argues that other provisions of KORA and related legislation, considered together, shows that "the legislature intended the public agency retain discretion over the method or manner by which it responds to requests to inspect or copy public records, unless otherwise *expressly* limited."

KORA grants the public the important right to inspect public records. K.S.A. 45-216. In *Wichita Eagle and Beacon Publishing Co., Inc. v. Simmons*, 274 Kan. 194, Syl. ¶ 4, 50 P.3d 66 (2002), our Supreme Court held that under KORA, "any nonexempt document, computer file, or tape recording in the possession of a public agency is subject to public disclosure under KORA." However, there is no explicit statutory requirement regarding the form such disclosure must take. Under KORA, the time, place, and manner of inspection are matters largely left to the discretion of the public agency. The Legislature simply requires the public agency to make "suitable facilities . . . available" for this purpose. K.S.A. 45-218(a). The time for inspection is tied to the public agency's regular business hours and "any additional hours established by the public agency." K.S.A. 45-218(b). In addition, the public agency has the discretion to "charge and require advance payment of a fee for providing access" to inspect the public records. K.S.A. 45-218(f). And the public agency retains its discretion to refuse requests that place an unreasonable burden on the agency or are intended to disrupt its essential functions. K.S.A. 45-218(e).

14

On the other hand, when the Legislature intended to restrict the time, place, or manner of inspection under KORA, it did so explicitly. For example, the public agency is required to act on requests for inspection within three business days or provide a written explanation for the delay. K.S.A. 45-218(d). Another example is that when a request for inspection is not directed to the official custodian of records, the public agency is required to inform the requestor and provide contact information for the custodian. K.S.A. 45-218(c). The Legislature limits reasonable charges for various public agencies, as set forth in K.S.A. 2020 Supp. 45-219(c)(1)-(5). And the Legislature has directed public agencies to remit such payments to appropriate funds. K.S.A. 2020 Supp. 45-219(d)-(e).

The provisions of KORA also balance the public's right to request copies of public records with the agency's autonomy, control, and discretion throughout the copying process. For example, copies of public records "shall be made while the records are in the possession, custody and control of the custodian or a person designated by the custodian." K.S.A. 2020 Supp. 45-219(b). Additionally, when practical the copies must "be made in the place where the records are kept" by the agency. K.S.A. 2020 Supp. 45-219(b). If the agency deems it necessary to use other facilities to complete the reproduction process, the person requesting the record is obligated to pay the vendor the associated copying costs, and the public agency may charge a "fee for the services rendered in supervising the copying" and establish the "schedule of times for making copies at other facilities." K.S.A. 2020 Supp. 45-219(b).

Another example of agency discretion in KORA relates to KORA's requirement that every public agency "designate a local freedom of information officer." K.S.A. 45-226(a). The Legislature does not specify qualifications for this position and defers to the public agency for such matters. K.S.A. 45-226. While the responsibilities of the public information officer are generally outlined in the statute, the officer is empowered to develop educational materials and information regarding the open records act and create a

15

brochure outlining the agency's KORA procedures. K.S.A. 45-226(b)(1), (4). Relevant to this appeal, the brochure must set forth "the procedures for inspecting and obtaining a copy of public records." K.S.A. 45-226(b)(4). The provisions relating to the freedom of information officer demonstrate the Legislature's intent to delegate to public agencies the authority to control the time, place, and manner of copying, unless expressly declared to the contrary. Consistent with KORA's other provisions, nothing in K.S.A. 45-226 limits the officer's discretion in determining the form or format in which copies of records will be provided.

Considered together, these statutes make clear that under KORA the Legislature did not authorize the requestor to have control over the original records or copying process but afforded the responsibility of determining the manner and method of reproduction to the public agency. And in the limited circumstances wherein the Legislature imposed limitations upon an agency's discretion, it did so explicitly and not by implication.

The Hospital also points out that, unlike Kansas, in more recent years, other jurisdictions have enacted explicit production format requirements into their open records act legislation. For example, in the Freedom of Information Act, Congress provided that "an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B) (2018). The Kentucky Legislature added a similar requirement. See Ky. Rev. Stat. Ann. § 61.874(2)(a) (providing that records "shall be available for copying in either standard electronic or standard hard copy format, as designated by the party requesting the records, where the agency currently maintains the records in electronic format"). See Neb. Rev. Stat. § 84-712(3)(a) (open records act provides that records "may be obtained in any form designated by the requester in which the public record is maintained or produced, including, but not limited to . . . electronic data . . . ."); Vt. Stat. Ann. tit. 1, §316(i) ("If an agency maintains public records in an electronic format,

16

nonexempt public records shall be available for copying in either the standard electronic format or the standard paper format, as designated by the party requesting the records.").

Notably, the provisions expressly providing for the disclosure of documents in electronic form were added after Kansas first adopted KORA. For example, 5 U.S.C. § 552(a)(3)(B) did not become law until 1996 when it was added to the Freedom of Information Act as part of the Electronic Freedom of Information Act Amendments of 1996 (Pub. L. No. 104-231, sec. 5, § 522(a)(3), 10 Stat. 3048, 3050 [1996]). Similarly, the Kentucky Legislature did not enact Ky. Rev. Stat.§ 61.874(2)(a) into law until 1994 (1994 Ky. Acts, ch. 262, sec. 4).

Clearly, in more recent times, some jurisdictions with open records laws have added the one-sentence disclosure requirement that Roe is seeking in this case. Yet, although KORA has been amended numerous times since its original enactment, and our Legislature presumably is aware of these updated statutory provisions, the Legislature has not amended KORA to add a similar requirement. See *State v. Bee*, 288 Kan. 733, 738, 207 P.3d 244 (2009) (An appellate court presumes that the Legislature acts with full knowledge and information about the statutory subject matter, prior and existing law, and the judicial decisions interpreting the prior and existing law and legislation.).

In support of her legal position, Roe cites to several Kansas attorney general opinions issued from 1988 through 2009 wherein the attorney general interpreted KORA to require production of certain computerized records in their native format. In its order granting partial summary judgment, the district court noted these opinions and concluded: "Previous attorney general opinions have determined that KORA requires, *by implication*, providing records that are kept or created upon computers in their electronic format." (Emphasis added.) We acknowledge that some prior attorney general opinions issued from 1988 through 2009 did, under various factual circumstances and related to

17

specific computerized documents, state that KORA impliedly requires disclosure of electronic public records when requested in an electronic format.

On the other hand, the district court did not rely on or discuss the most recent attorney general's opinion issued on September 26, 2019. This 10-page opinion was filed in direct response to Roe's KORA complaints and pertains to the same public records at issue in this litigation. Regarding Roe's repeated complaints that the Hospital failed to provide native-based electronic production of open records, the attorney general relied on the plain language of KORA and found: "KORA contains no language requiring records be provided in their native format. A public agency retains the discretion to determine the format in which the records are produced." The attorney general concluded: "In order to find a violation, we must conclude by a preponderance of the evidence that a public agency knowingly violated the KORA. For the reasons described above, we conclude that the [H]ospital did not knowingly or intentionally violate the KORA."

In this latest opinion, the attorney general considered the past opinions of the attorney general's office but concluded that the Hospital's responses to Roe's request in this case did not violate the provisions of KORA. During oral arguments, Roe stated she was not able to reconcile the older attorney general opinions with the latest one, except to say the September 26, 2019, opinion in response to her complaints was "unsubstantiated." For its part, the Hospital argues that the latest opinion directly related to the public records at issue in this litigation is more relevant than opinions issued by the attorney general 10 to 30 years ago.

Appellate courts are not bound by the conclusions of attorney general opinions, but they may provide persuasive authority. *Data Tree, LLC v. Meek*, 279 Kan. 445, 455, 109 P.3d 1226 (2005). Like Roe, we have difficulty reconciling the contradictory opinions issued by the attorneys general over the years, and for that reason we do not place much weight on their conclusions. If there is a common thread in the opinions,

18

however, it is that when the attorney general found that KORA required disclosure of public records in the format requested, this right was usually described as "implied." See Att'y Gen. Op. No. 89-106, 1989 WL 455546, at *4 (indicating that "[b]y implication," the statute requires the production of information in the format requested); Att'y Gen Op. No. 2009-14, 2009 WL 1999673, at *2 (same).

The September 26, 2019 opinion, however, dispenses with statutory construction to discern an implied right, and employs a plain reading of the statute to conclude that no such language requiring a public agency to provide public records in a native format is found in KORA. As discussed earlier, we find this is the proper approach to understanding the meaning of KORA's provisions. See *Fort Hays State University. v. Fort Hays University Chapter, American Assoc. of University Professors*, 290 Kan. 446, 464-65, 228 P.3d 403 (2010); *Bussman*, 298 Kan. at 725 ("It is not [the court's] place to add a provision to [the statute]" that is unavailable under its plain language.).

All things considered, we hold the district court erred as a matter of law in granting partial summary judgment to Roe. This is because KORA does not require a public agency to produce electronic public records in the format of the requester's choice—such as a native-based electronic format—if the agency has the capability of producing the record in that requested format. Accordingly, the judgment is reversed, and the case is remanded for further proceedings with directions.

We pause to address the subject of metadata and formulas that may be contained within the electronic records subject to disclosure under KORA. In its order, the district court mentioned the characteristics of some of the Hospital's electronic records. For example, it is uncontroverted that the Hospital uses computer programs such as Microsoft Word, PowerPoint, Adobe Acrobat.pdfs, and Excel spreadsheets to create electronic files. The district court noted that "individual cells in the Excel spreadsheets Hospital creates may include formulas."

19

During oral argument, the Hospital's attorney discounted the importance of formulas and metadata stating, "Even if metadata is part of a record there's really no allegation that the things that are hidden—formulas in an excel spreadsheet—are relevant to any request that's been made by Ms. Roe in this matter." The Hospital also cautions that production of metadata could result in discovery of notes and preliminary drafts that, in some circumstances, are exempt from KORA. See K.S.A. 2020 Supp. 45-221(a)(20).

For her part, Roe stated that she did not specifically request metadata but "metadata doesn't contain the separate previous drafts or copies or whatnot. If I saw in the metadata that there had been a previous draft I would have to request that separate draft." Both attorneys agreed that no expert testimony was presented in this case regarding the production of different computer formats or metadata.

In short, the state of our record and argument in this regard is less than ideal. As a result, we decline to weigh in and decide this specific matter, especially since the focus of the briefing was on the overarching question of whether KORA requires production in native format. On remand, the parties may brief and submit arguments to the district court regarding the production of hard copies relating to metadata and formulas contained in the Hospital's electronic public records subject to disclosure under KORA.

DID THE DISTRICT COURT ERR BY DENYING THE HOSPITAL'S MOTION TO SEAL AND STRIKE ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS?

For its second issue on appeal, the Hospital contends the district court erred in denying the Hospital's motion to seal Roe's reply in support of her motion for summary judgment, to strike the offending portions of documents in support, and for sanctions, "because the communications during Hospital's executive session that Ms. Roe surreptitiously recorded are protected by attorney client privilege." Roe counters that the

district court properly determined that the executive session was not subject to the attorney-client privilege and, if any privilege applied, the Hospital waived that privilege.

As part of her open records request, Roe sought disclosure of an investigative report she claimed McClymont provided to the Board in an executive session on November 16, 2017. Roe asserted this report gave legal advice to the Hospital regarding a potential violation of KOMA. On August 16, 2019, Roe petitioned the district court to enforce her right to receive the report. To support her motion for summary judgment regarding her right to receive the report, Roe submitted her own affidavit wherein she stated that she believed the report was prepared by McClymont regarding his investigation of the KOMA matter.

The Hospital's response controverted Roe's allegations. In particular, the Hospital stated that McClymont had not finalized his report at the time of the executive session, and the report subsequently was not finalized because the Hospital received advice from the attorney general's office that it was not necessary to self-report because there was no KOMA violation. In support of its claims, the Hospital submitted affidavits from the Board Chairman Stanley Kats and the Hospital's Chief Executive Officer Rex Walk, stating that the report was not provided to any Board member at the November 16, 2017, executive session.

In her reply to the Hospital's response, Roe included a certified transcript of an audio recording of the executive session, which she stated she had secretly recorded. According to Roe, the recording supported her claim that the McClymont report existed and that during the meeting, McClymont handed the investigative report to Kats.

In response, McClymont sent a letter to the district court asking that Roe's reply be sealed and the transcript references be stricken because any communications that occurred during the executive session—which was closed for privileged attorney-client

consultation under K.S.A 75-4319(b)(2)—and the disclosure of the contents of that meeting violated the attorney-client privilege. The district court temporarily sealed the document for 14 days pursuant to K.S.A. 2020 Supp. 60-2617. The Hospital filed a timely motion under K.S.A. 2020 Supp. 60-2617 and both parties presented their arguments.

Relevant to this issue, Les Lacy, the vice president of regional operations for the management company Great Plains Health Alliance, Inc., a third-party contractor, was present during the November 16, 2017, executive session. The Hospital acknowledged that Lacy was present during the executive session because he was responsible for managing the Hospital's operations.

The district court denied the Hospital's request to seal or to strike the disclosed transcript from the record as well as its request for sanctions. The district court found that "because Lacy did not give information to the lawyers nor could he take action on the advice given by the lawyers, he was a third party and the communications made between Hospital and its attorneys in the executive session on 11/16/2017 regarding the alleged KOMA violation were not confidential and therefore not privileged." In addition, the district court ruled that the Hospital waived its attorney-client privilege with McClymont regarding the KOMA investigation.

In the district court's ruling, it found that "there remains a factual dispute about whether or not McClymont handed a written report to the Hospital's board chairman. That dispute of fact will need to be determined at trial, but the evidence which can be presented at trial depends upon the Court's proper application of the attorney-client privilege."

As a preliminary matter, Roe contends the Hospital did not appeal this ruling and, as a result, the issue is abandoned. The notice of appeal, however, explicitly covers the

22

ruling by the district court on the Hospital's motion. Roe's claim that this issue has been waived or abandoned lacks merit. We will address the issue.

Roe also claims the Hospital did not argue on appeal that sanctions should have been imposed, other than noting the district court could reconsider sanctions on remand. We agree this issue is not appropriate for our review. We will not review the district court's ruling denying sanctions. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (A point raised incidentally in a brief and not argued therein is deemed abandoned.).

Our standard of review provides:  "When the underlying facts are undisputed, a ruling on the existence and effect of an attorney-client privilege is reviewable by an appellate court de novo." *Freebird, Inc. v. Cimarex Energy Co.*, 46 Kan. App. 2d 631, 639, 264 P.3d 500 (2011) (citing *State v. Jones*, 287 Kan. 547, 554, 198 P.3d 756 [2008]).

In denying the Hospital's motion, the district court reasoned that the Hospital waived the attorney-client privilege due to Lacy's presence. The district court found that a waiver arises if a corporate representative (1) provides no information to counsel in connection with a communication; or (2) lacks authority to unilaterally implement counsel's advice. The Hospital asserts this decision "would radically restrict the attorney-client privilege, discarding statutory authority and putting the State of Kansas out of step with other jurisdictions." As a second reason to deny the motion, the district court also found the Hospital expressly waived its attorney-client privilege during the November 16, 2017, executive session.

We begin the analysis with a brief review of Kansas law relating to attorney-client privileged communications. K.S.A. 2020 Supp. 60-426(a) provides that "communications found by the judge to have been between an attorney and such attorney's client in the

23

course of that relationship and in professional confidence, are privileged . . . ." See *State v. Gonzalez*, 290 Kan. 747, 234 P.3d 1 (2010). The Legislature has defined "communication" to include "advice given by the attorney in the course of representing the client." K.S.A. 2020 Supp. 60-426(c)(2). See *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 419-20, 997 P.2d 681 (2000) (recognizing that K.S.A. 2020 Supp. 60-426[c] includes communications from lawyer to client); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1371 (10th Cir. 1997) (Kansas courts favor a broad approach to protecting attorney-client communications "without the qualification that the communications must contain confidential matters revealed by the client earlier to the attorney."). "It is well settled that corporations may assert the attorney-client privilege." *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 (D. Kan. 1993) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389-90, 101 S. Ct. 677, 66 L. Ed. 2d 584 [1981]). Importantly, the Kansas Supreme Court has admonished that "[t]he privilege should not be set aside lightly." *Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co., Inc.*, 250 Kan. 54, 63, 824 P.2d 933 (1992).

Our Supreme Court has held that the attorney-client privilege applies if all eight of the following factors are present:

> "'(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.'" *Cypress Media, Inc.*, 268 Kan. at 418.

The Hospital has the burden to show the privilege applies. 268 Kan. at 425; see *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 374, 22 P.3d 124 (2001) (party asserting the privilege bears the burden of proof).

24

Relevant to this appeal, the attorney-client privilege does not apply to communications made in the presence of third parties. See *Fischer v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515, 519, 527 P.2d 1026 (1974). Relying on this authority, the district court determined the attorney-client privilege was waived by Lacy's presence in the executive session. Lacy is an employee of the Hospital's management team and serves as an agent of the Hospital under a management agreement. The district court found that Lacy should be treated as an employee in this case, and that in the corporate context, an employee may have relevant information needed by corporate counsel if counsel is to adequately advise the client. See *Upjohn*, 449 U.S. at 391. The court reasoned that Lacy's presence at the executive session constituted a waiver of attorney-client privilege because "Lacy provided no information to Hospital's attorneys regarding the alleged KOMA violation, nor did Lacy have the ability to act on the advice of Hospital's attorneys regarding the alleged KOMA violation."

The Hospital disputes the finding that Lacy was a third party, noting that it had a management agreement with Lacy. When a county hospital enters into a management agreement "to carry out the regular management of the county hospital, the managing entity serves as an instrumentality of the county government." *State v. Great Plains of Kiowa County, Inc.*, 308 Kan. 950, Syl. ¶ 1, 425 P.3d 290 (2018); see K.S.A. 19-4611(d). It is undisputed that Lacy was the vice president of regional operations for the company hired to manage the Hospital's operations, and as such, he was acting as an instrumentality of the county during the executive session.

In support of her legal position, Roe relies on *In re Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994), contending that the presence of a third party waived the attorney-client privilege. However, *Bieter* does not support Roe's position. In *Bieter*, the Eighth Circuit granted the writ of mandamus and held that the attorney-client privilege applies to communications between corporate counsel and outside consultants, finding that "it is inappropriate to distinguish" between employees and independent consultants when

applying the attorney-client privilege. 16 F.3d at 937. See *In re Copper Market Antritrust Litigation*, 200 F.R.D. 213, 220 (S.D.N.Y. 2001) (finding third-party disclosure analysis "inapposite" regarding outside consultants because they are functional equivalents of employees for purposes of the attorney-client privilege).

Moreover, Kansas law does not require that Lacy provide information to the Hospital's attorneys for the privilege to attach. The district court found it significant that Lacy did not provide information to the lawyers, nor could he take any action on the advice given to the lawyers. But Lacy was part of the Hospital's management group, and the privilege also applies when receiving advice from counsel. K.S.A. 2020 Supp. 60-426(c)(2) ("'Communication' includes advice given by the attorney in the course of representing the client . . . ."); see *Natta v. Hogan*, 392 F.2d 686, 693 (10th Cir.1968) ("The recognition that privilege extends to statements of a lawyer to a client is necessary to prevent the use of the lawyer's statements as admissions of the client."). In other words, the fact that Lacy did not provide information to the Hospital's lawyers in the executive session is immaterial. The fact remains that Lacy, in his capacity as manager of the Hospital's operations, received legal counsel from the Hospital's lawyers.

Regarding the district court's finding that Lacy did not "have the ability to act on the advice of the Hospital's attorneys regarding the alleged KOMA violation," we find no factual support in the record for this assertion. On the contrary, the record shows that Lacy was one of the Hospital's authorized representatives with managerial responsibility.

In summary, K.S.A. 2020 Supp. 60-426(c)(1) provides that a client's "authorized representative" is included within the scope of the attorney-client privilege. Lacy served as the Hospital's managing agent. Given this managerial authority and responsibility, it was appropriate for Lacy to be privy to the legal opinion and strategy developed through the attorney-client communications during the executive session. Although the district court reasoned that the privilege may not extend beyond the Hospital's attorneys and the

26

Board, we disagree. No Kansas law recognizes such a bright-line test, which could even prohibit the attorney-client privilege from attaching to otherwise confidential communications between counsel and the Hospital's chief executive officer. Moreover, this understanding is contrary to K.S.A. 19-4611, which confirms there is no legal distinction between the Hospital and its Board of Trustees. K.S.A. 19-4611(g). We conclude the district court erred in finding that Lacy's presence in the executive session constituted a waiver of the attorney-client privilege.

The district court's second reason for denying the Hospital's motion is that the Hospital expressly and impliedly waived privilege as to any communications made during the executive session. Roe claims the privilege was waived both through a general motion authorizing the disclosure of McClymont's advice and a specific motion authorizing the disclosure of McClymont's findings to the attorney general. The Hospital counters that it never waived its attorney-client privilege as to communications made during the executive session.

The November 16, 2017, executive session was attended by three separate attorneys from two law firms (McClymont Law Office, P.A. and Forbes Law Group, LLC). During the executive session, the Hospital authorized attorney Frankie Forbes to disclose McClymont's KOMA findings to the attorney general. Based on this authorization, the district court ruled that any communication between McClymont and the Hospital was waived.

Our review of the record on appeal, however, shows the Board's purpose during the executive session was to only waive the attorney-client privilege as to McClymont's findings regarding his KOMA investigation in order to inform the attorney general's office of this matter. We discern no intent to generally waive the attorney-client privilege as to the communications and contents of the Board's executive session to any person. The record shows the Hospital provided Forbes with limited authorization to disclose

27

McClymont's investigative findings to the attorney general's office. However, the motion to disclose the findings was limited to McClymont's findings and did not constitute a waiver of all privileged attorney-client communications exchanged between the Board and its attorneys during the executive session. We are persuaded that the district court mistakenly viewed the Board's limited authorization as a general waiver of all privileged communications made by all counsel during the executive session.

Additionally, the district court erred in finding a waiver of attorney-client privilege because no disclosure of a written or oral report—or any other information—occurred. That is because the Hospital ultimately did not provide a copy of McClymont's report to the attorney general. Roe counters that the mere authorization of a waiver is sufficient, but K.S.A. 60-437 provides that privilege is waived, in part, where a party "made disclosure of any part of the matter or consented to such a disclosure made by anyone." See *Butler ex rel. Commerce Bank, NA. v. HCA Health Services of Kansas, Inc.*, 27 Kan. App. 2d 403, 427, 6 P.3d 871 (1999) (waiver of a privileged communication may be withdrawn at any time before it has been acted on).

In the case on appeal, although there was no express withdrawal of the waiver, the Hospital never made an actual disclosure. Based on a discussion with the attorney general's office, the Hospital decided that disclosure of McClymont's report was unnecessary. Consequently, the Hospital's counsel neither acted on the limited authorization to waive the privilege in connection with McClymont's investigative findings, nor did he otherwise disclose any privileged, attorney-client communications to a third-party. Because the limited disclosure authorized by the Board was not made by anyone, no waiver of the attorney-client privilege occurred.

Finally, the Hospital asserts that the district court's ruling ignores Forbes' right to privileged communications. The attorney-client privilege exists "to encourage full and frank communication between attorneys and their clients" to "promote broader public

interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389; *Meneley*, 271 Kan. at 373 (privilege fosters candid communication). Kansas law protects communications made by McClymont to Forbes as he was actively receiving facts and giving advice to the Hospital. The privilege extends to communications between an attorney and a client's "authorized representative." K.S.A. 2020 Supp. 60-426(c)(l). McClymont was the Hospital's authorized representative to investigate the possible violation of KOMA. The communications made during the executive session—between the Board, the Hospital's attorneys, and its representatives—are privileged, and that privilege was not expressly waived.

The district court erred in denying the Hospital's motion to seal or to strike based on a finding that the attorney-client privilege did not apply to protect the communications made during the executive session. Accordingly, the district court erred in denying the Hospital's motion to seal Roe's reply in support of her motion for summary judgment, and to strike the attorney-client privileged communications contained in portions of the documents in support.

The district court's ruling is reversed and the matter is remanded. On remand, the district court is instructed to strike those portions of Roe's reply, including but not limited to the transcript of the audio recording of the November 16, 2017 executive session, that disclosed the privileged attorney-client communications. Upon the district court's review and confirmation that all attorney-client privileged information has been redacted, Roe may file the redacted reply.

Reversed and remanded with directions.

* * *

CLINE, J., concurring: I concur but write separately to express my view that electronic files and electronic information associated with such files (like metadata and spreadsheet formulas) fall within Kansas Open Records Act's (KORA) definition of "public record." K.S.A. 2020 Supp. 45-217(g)(1) (defining "public record" to mean "any recorded information, *regardless of form, characteristics* or location, which is made, maintained or kept by or is in the possession of: (A) Any public agency; or (B) any officer or employee of a public agency . . . ." (Emphasis added.)

I agree Kelly Roe is not entitled to dictate the format in which Phillips County Hospital (Hospital) produces its public records under KORA. And I would leave the details of the production of the electronic information and files (including the reasonableness of the cost of such production and applicability of any exemptions from production) in the hands of the district court. But I would remand with directions that the Hospital must satisfy the district court that its proposed format of production (a paper copy) includes the relevant electronic information associated with the public records (like metadata and spreadsheet formulas), so long as KORA's other provisions are satisfied and no exception exists.